# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00292-CV

**Alejandro Perez and Bobbie Perez, Appellants**

**v.**

**Embree Construction Group, Inc., Appellee**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT
NO. A-01-1086-C, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING**

## O P I N I O N

Alejandro Perez and his wife, Bobbie Perez,[1] brought suit against Embree Construction Group, Inc. to recover damages for personal injuries suffered by Perez when he fell from the roof of a building located on a construction site in San Angelo, Texas. At the time of the fall, Perez was employed by Kent Elliott Roofing, a roofing subcontractor hired by Embree. Embree served as the general contractor on the project. Perez brought suit against Embree on the basis of negligence. Mrs. Perez brought a loss of consortium claim.

On December 19, 2003, the trial court granted a partial summary judgment in favor of Embree, dismissing Perez's negligence claims that involved allegations that Embree owed a duty of care to Perez under its contract with Kent Elliott and that Embree had assumed a general duty of

---

[1] Because this appeal focuses primarily on facts involving Alejandro Perez, for simplicity's sake we will refer to Alejandro Perez as "Perez" and Bobbie Perez as "Mrs. Perez."

care to Perez through control-in-fact of the workplace. The matters resolved by the partial summary judgment are not at issue in this appeal. The trial court allowed the trial to go forward on the limited theory that Embree owed a duty to Perez to stop work if it became aware that Kent Elliott was routinely violating safety regulations. At the close of Perez's case, the trial court directed a verdict for Embree, finding as a matter of law that Embree did not have a duty to stop work. The trial court entered a final judgment that Perez take nothing and denied his motion for new trial. Because Mrs. Perez's loss of consortium claim was derivative of Perez's cause of action, her claim failed as well.

Perez raises four points of error on appeal. He contends that the trial court erred in (1) granting a directed verdict in favor of Embree, (2) striking his claims for negligence per se and punitive damages, (3) striking his expert witness on premises safety and federal regulations, and (4) denying his motion for new trial without a hearing.

We affirm the district court's directed verdict. We further hold that the trial court did not abuse its discretion in striking Perez's claims for negligence per se and punitive damages or denying his motion for new trial and that the trial court's exclusion of Perez's expert witness testimony was harmless error.

## BACKGROUND

On August 16, 1999, Perez fell from the roof of an Eckerd Drug Store that was under construction in San Angelo, Texas. Perez's employer, Kent Elliott Roofing, had been hired to do roofing work on the Eckerd project by Embree, the general contractor. Kent Elliott employees had been working on the roof of the building since August 9, 1999.

2

The roof was surrounded on three sides by a parapet wall, leaving the fourth side unprotected.[2] At the time of the accident, Perez was assigned to cut insulation along the unprotected edge of the roof. While cutting the insulation, Perez discovered that his knife would not cut completely through the material, so he attempted to break the insulation off manually. While doing so, Perez lost his balance and fell approximately 26 feet to the ground below, landing on a pile of construction materials and severely fracturing his hip, among other injuries.

Embree contends that at the time of the fall, Kent Elliott employees used the parapet wall for fall protection on three sides of the roof, while a safety-monitoring system served as fall protection along the unprotected edge.

Three days after Perez's fall, an Occupational Safety and Health Administration (OSHA) inspector came to the job site to investigate the accident. When questioned about the fall protection in place at the time of the accident, Kent Elliott employees produced a safety harness and rope, claiming that when the safety harness was in use, it was secured by another worker holding the end of the rope.

Perez testified that he was never given a safety harness to wear on the Eckerd job site and was not aware of any flags marking the area near the unprotected edge of the roof. Perez also testified that he did not see a safety monitor on the roof on the day of the fall and did not receive any safety warnings while working near the unprotected edge.[3] Perez stated that he did not know of

---

[2] There was extensive debate at trial concerning the height of the parapet wall in relation to the sloped roof. Because the height of the parapet wall is not relevant to the outcome of this appeal, it is sufficient to note that the parapet wall was no more than four feet tall at any point.

[3] Embree claims that Perez did in fact receive a safety warning from Ismael Guerrero, another Kent Elliott employee. Embree, in its motion for summary judgment, cites Perez's testimony

anyone working as a safety monitor on any of the crews he had worked on for Kent Elliott. In his deposition, Perez stated that he did not notice any Kent Elliott employees wearing a safety harness held by another worker.

Toby Galindo, Kent Elliott's project manager, was working on the roof at the time of the accident. Galindo testified that he was "sure there was" a safety monitor on the roof based on his experience working for Kent Elliott, but he was uncertain who it was at the time of Perez's fall. Galindo also testified that he could not remember whether there were flags marking the unprotected edge of the roof at the time of the fall.

Billy Moffett, Embree's superintendent on the Eckerd project, stated in his deposition that he spent the majority of his time on the job site working in his trailer. Moffett also stated that he was not familiar enough with OSHA fall-protection regulations to know whether a fall-protection system was compliant. Galindo testified that he informed Moffett prior to beginning work that Kent Elliott would use a safety-monitoring system as fall protection.

The trial court took judicial notice of the OSHA regulations regarding approved fall-protection procedures. While the exact slope of the roof of the Eckerd project is not clear, the parties agree that the roof sloped at a rate no greater than one inch per foot, making it a low-slope roof for OSHA regulation purposes. *See* 29 C.F.R. § 1926.500(b) (2006). The OSHA-approved fall-protection procedures for low-slope roofs include a guardrail system and a combination of a

---

that, "I heard Ismael but once that I was falling—when I was falling down. He told me, 'Careful,' he said." This Court declines to indulge the argument that a shout of "Careful!" from a fellow roofer once Perez was already falling off the roof could constitute the type of safety warning contemplated by the OSHA regulations regarding the safety-monitoring system.

4

warning-line and safety-monitoring system. *Id*. § 1926.501(b)(10) (2006). A safety-monitoring system in the absence of a warning line is not an approved fall-protection procedure. *Id.*

Galindo testified that prior to the accident, he told Moffett that Kent Elliott's employees should not work on the roof while it had an unprotected edge. According to Galindo, Moffett insisted that Kent Elliott continue work on the roof anyway. Moffett denies this conversation and claims that he voiced safety concerns regarding the unprotected edge to Galindo, and that Galindo downplayed his concerns.

On September 3, 2004, Perez attempted to amend his petition to add claims for negligence per se and punitive damages on the basis of gross negligence, although an amended pleading deadline of December 12, 2003, had been set by the trial court's scheduling order. The trial court granted Embree's motion to strike the amendment.

The court's scheduling order also set September 30, 2003, as the deadline for designating expert witnesses. On September 10, 2004, Perez made a formal designation of Jim Sealy as an expert witness regarding federal safety regulations and industry standards for complying with those regulations. Perez filed a motion to enlarge time for an expert-witness designation, which the trial court denied. The trial court granted Embree's motion to exclude Sealy's expert-witness testimony on the basis of untimely designation.

**DISCUSSION**

**The Directed Verdict**

In Perez's first issue, he argues that the trial court erred in granting Embree's motion for directed verdict because Embree exercised sufficient control over Kent Elliott's work to create

5

a fact issue with respect to whether Embree owed a duty to Perez to stop work if it became aware of routine safety violations.

In reviewing a directed verdict, we must determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978). We examine the evidence in the light most favorable to the party suffering an adverse judgment. *Id*.

Generally, a general contractor does not have a duty to see that a subcontractor performs work in a safe manner. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). However, a limited duty arises if a general contractor retains control over a subcontractor's methods of work or operative details, so that the subcontractor is not entirely free to do the work in his own way. *Koch Refining Co. v. Chapa*, 11 S.W.3d 153, 154 (Tex. 1999). A general contractor's "duty of reasonable care is commensurate with the control it retains" over the subcontractor. *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 355 (Tex. 1998). General supervisory control that does not relate to the activity causing the injury is not sufficient to create a duty. *Hagins v. E-Z Mart Stores*, 128 S.W.3d 383, 388-89 (Tex. App.—Texarkana 2004, no pet.).

A general contractor that retains control over safety matters owes a duty to a subcontractor's employees if the general contractor "is aware that its contractor routinely ignores applicable federal guidelines and standard company policies related to safety." *Mendez*, 967 S.W.2d at 357. Where an injury is caused by a subcontractor's routine disregard of safety guidelines and policies, a *Mendez* duty of care arises if the general contractor exercised control over the safety procedures related to the injury. *See id*; *Hagins*, 128 S.W.3d at 389; *Hanna v. Vastar Res., Inc.*,

6

84 S.W.3d 372, 377 (Tex. App.—Beaumont 2002, no pet.). Therefore, Embree owed Perez a *Mendez* duty of care if it exercised control over Kent Elliott's fall-protection procedures.

The Texas Supreme Court has generally looked to whether a general contractor approved or required specific safety procedures in order to determine if the general contractor exercised control over safety matters. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 609 (Tex. 2002) (holding that presence of general contractor's safety representatives on job site was insufficient to establish control where representatives did not specifically approve or have knowledge of safety procedures used by subcontractor); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001) (finding that general contractor retained control over safety matters when it assigned employee to oversee and routinely inspect subcontractor's use of fall protection); *Mendez*, 967 S.W.2d at 357 (holding that general contractor had control over safety issues when it promulgated specific safety procedures and required subcontractors to follow them).

The subcontract between Embree and Kent Elliott gave Embree the right to stop work in the event that Kent Elliott disregarded laws, ordinances, rules, regulations, or orders of a public authority. Perez argues that the right to stop work imposed on Embree the duty to do so if Kent Elliott violated safety regulations and gave Embree sufficient control over safety-related matters to create a *Mendez* duty. However, the Texas Supreme Court has held that "a general right to order the work stopped" in the event of a safety hazard is insufficient to establish that a general contractor exercised control because "[t]o hold otherwise would deter general contractors from setting even minimal safety standards." *Dow Chem. Co.*, 89 S.W.3d at 607-08. As a result, Embree's general right to stop work under the contract does not constitute sufficient control over Kent Elliott's fall-protection procedures to give Embree a duty of care regarding fall-protection safety violations.

7

Galindo, Kent Elliott's supervisor, claims that prior to the accident, he spoke with Moffett, Embree's superintendent, to voice his concerns that Kent Elliott's employees should not work on the roof while it had an unprotected edge. According to Galindo, Moffett insisted that Kent Elliott continue work on the roof anyway. Moffett denies this conversation and claims that he voiced safety concerns regarding the unprotected edge to Galindo.

For purposes of viewing the evidence in the light most favorable to Perez, the party suffering an adverse judgment, we will assume that Galindo's testimony is true. However, even taking Galindo's testimony as true, an order from a general contractor to a subcontractor to continue working is not evidence that the subcontractor was not free to do the work its own way or evidence that the general contractor controlled the method of work or its operative details. *See Koch Refining Co.*, 11 S.W.3d at 154. Moffett's instruction to continue working did not deprive Kent Elliott of the freedom to implement its own method of fall protection. Kent Elliott, although compelled to continue working on the roof, remained free to control the operative details of its roofing activities and fall-protection procedures. A general contractor "must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability." *Id.* at 156. Moffett's general instruction to continue working falls under Embree's "general right to order the work to start or stop, to inspect progress or receive reports," which does not reach the degree of control required to impose a duty of care on a general contractor. *Redinger*, 689 S.W.2d at 418.

There is no evidence that Embree specifically approved of Kent Elliott's fall-protection system, assigned employees to inspect or oversee the fall-protection system, or required Kent Elliott to follow a specific fall-protection procedure. Embree's general right to stop work under

8

the contract and Moffett's instructions to Kent Elliott to continue roofing do not constitute control over the methods or operative details of Kent Elliott's safety procedures. Because the evidence, when viewed in the light most favorable to Perez, does not create a fact issue concerning whether Embree, as general contractor, exercised a sufficient level of control over the actions of Kent Elliott to owe a duty of care to Perez, we overrule Perez's first issue.

**Trial Amendments**

In Perez's second issue, he contends that the trial court erred in striking his amendments adding claims for negligence per se and punitive damages based on gross negligence because Embree did not make a showing of prejudice or surprise.

A trial court's decision on whether to allow the amendment of pleadings is reviewed under an abuse-of-discretion standard. *Ohio Med. Prods., Inc. v. Suber*, 758 S.W.2d 870, 872 (Tex. App.—Houston [14th Dist.] 1988, writ denied). A trial court has the discretion to refuse an amendment of pleadings if the opposing party presents evidence of surprise or prejudice or the amendment is prejudicial on its face. *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990); *see also* Tex. R. Civ. P. 66 (directing that the court should "freely" allow amendments when it subserves the merits of the case and the opposing party fails to show prejudice).

If an amendment is prejudicial on its face, the opposing party does not bear the burden of showing prejudice or surprise, as such a showing "may be based on the trial court's conclusion that the amendment on its face is calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial." *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980); *see also* Tex. R. Civ. P. 63 (providing that

9

leave to file amendments should be granted unless "there is a showing that such filing will operate as a surprise to the opposite party").

Although the trial court's scheduling order set the deadline for amended pleadings as December 12, 2003, Perez filed an amended pleading on September 2, 2004, to include additional claims for negligence per se and punitive damages. The case was originally filed on August 17, 2001, and trial began on November 16, 2004. In light of this timeline, it would be reasonable for the trial court to view Perez's amendment as calculated to surprise Embree. As a result, we hold that the trial court acted within its discretion in striking the amended causes of action for gross negligence and negligence per se filed in a case that had been on file for more than three years, more than nine months after the amendment deadline and around two months before trial. We overrule Perez's second issue.

**Expert-Witness Testimony**

In Perez's third issue, he contends that the trial court erred in striking his expert witness on premises safety and OSHA regulations due to untimely designation. Perez asserts that his reference to the witness's deposition testimony in discovery responses constitutes sufficient designation.

A trial court's exclusion of an expert witness that has not been properly designated must be reviewed under an abuse-of-discretion standard. *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994). If the trial court erred in excluding the witness, the error is reversible if it is both controlling on a material issue and not cumulative. *Id.*

The trial court excluded expert witness Jim Sealy's testimony on the grounds that Perez failed to properly designate Sealy. Sealy had originally been designated as an expert witness by Alliance Architects, a former party in this case that was granted summary judgment on August 9, 2002. In Perez's February 24, 2003, response to requests for disclosure, he noted that "Plaintiffs have not retained any testifying experts as of the filing of this Disclosure Statement. . . . Plaintiffs will also use Jim W. Sealy and Michael Parris as non-retained adverse experts who will testify through deposition." Perez did not describe the subject matter on which Sealy would testify, but instead stated, "See deposition testimony previously given." On October 4, 2003, Perez filed an amended response to requests for disclosure, which included Sealy's address and listed the subject matter of Sealy's testimony as "[m]edical or OSHA standards."

A plaintiff's expert will be considered "timely" designated if the requested information is provided either ninety days before the end of the discovery period or as otherwise ordered by the court. *Cunningham v. Columbia/St. David's Healthcare Sys., L.P.*, 185 S.W.3d 7, 11 (Tex. App.—Austin 2005, no pet.). In this case, the court's scheduling order required parties to designate experts by submitting the expert's name, address, topic of testimony, and reports by September 30, 2003. Expert reports related to an expert witness who is not retained by the responding party are not discoverable. Tex. R. Civ. P. 194.2(f)(4). As of September 30, 2003, Perez's discovery responses were incomplete to the extent they failed to include Sealy's address. Failure to include a witness's address in discovery responses may be considered grounds for exclusion of the witness's testimony. *See Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex. 1989).

It was within the trial court's discretion to deny Perez the opportunity to call an expert

witness that was not properly designated by the relevant deadline. *See Crawford v. Hope*, 898 S.W.2d 937, 944 (Tex. App.—Amarillo 1995, writ denied). As a result, we conclude that the trial court did not abuse its discretion by excluding Sealy's testimony on the basis that Sealy was not properly designated, because Perez's discovery responses regarding Sealy were incomplete as of the deadline set in the scheduling order.

Exclusion of an untimely designated expert's testimony is mandatory if the plaintiff does not establish good cause for the late designation or a lack of unfair surprise or prejudice. Tex. R. Civ. P. 193.6; *see Cunningham*, 185 S.W.3d at 12; *Norfolk S. Ry. Co. v. Bailey*, 92 S.W.3d 577, 580-81 (Tex. App.—Austin 2002, no pet.). Perez did not present evidence of good cause for failing to timely designate Sealy as an expert witness. However, Perez argues that Embree was not unfairly surprised or prejudiced because Sealy's deposition testimony was referred to in Perez's discovery responses. Perez takes the position that this testimony, given by Sealy in his capacity as a retained expert for Alliance Architects, was sufficient to put Embree on notice of the subject matter of Sealy's opinions. We need not address Perez's contention because even if the exclusion of the testimony was in error, it was harmless error.

"[F]or the improper exclusion of evidence to be reversible, the erroneously excluded evidence must have been controlling on a material issue." *Elliott*, 21 S.W.3d at 921; *see also* Tex. R. App. P. 44.1 (providing that to reverse trial court's judgment, error must have "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals"). The trial court's judgment turned on the material issue of whether Embree owed a duty to stop work based on an awareness of routine safety violations.

The trial court found, and we have affirmed, that Perez failed to establish that Embree exercised a sufficient level of control over Kent Elliott's work to create such a duty. Perez asserts that Sealy was retained as an expert witness to testify on the issue of OSHA regulations, specifically that OSHA regulations applied to the construction site where the injury took place, which is not in dispute and in any case is irrelevant to the issue of whether Embree exercised control. Because the excluded evidence was not controlling on a material issue, we hold that the trial court's exclusion of Sealy's testimony was, at most, harmless error. We overrule Perez's third issue.

**Motion for New Trial**

In Perez's fourth issue, he contends that the trial court erred in denying his motion for new trial without a hearing. Perez argues that a trial court has no power to refuse a hearing on a motion for new trial.

The resolution of a motion for new trial is left up to the trial court's discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984). The trial court's denial of such a motion is not to be disturbed on appeal unless there is an abuse of that discretion. *Id.*

Texas law does not require a trial court to hold a hearing before denying a motion for new trial if the motion does not present a complaint on which evidence must be heard. *See Cecil v. Smith*, 804 S.W.2d 509, 512 n.5 (Tex. 1991). "Certainly it would not be error for the court to refuse to hold a hearing on a motion for a new trial except where it would be necessary to hear evidence upon a matter such as jury misconduct." *University of Tex. v. Morris*, 352 S.W.2d 947, 949 (Tex. 1962). Perez's motion for new trial does not present any issues on which evidence must be

13

heard, but merely reasserts the legal arguments urged at trial.  We hold that the trial court did not err in denying Perez's motion for new trial without a hearing.  Perez's fourth issue is overruled.

## CONCLUSION

Because we hold that Embree did not exercise sufficient control to owe a duty to stop work as a matter of law, that striking Perez's expert witness was harmless error, and that the district court did not abuse its discretion by striking Perez's amended pleading or denying Perez's motion for new trial, we affirm the district court's directed verdict**.**

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed:   June 27, 2007