TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00125-CV






Austin Periodontal Associates, Inc. f/k/a C. Leonard Dolce, D.D.S., M.S., Inc.; and
Charles Leonard Dolce, D.D.S., M.S., Individually and d/b/a Periodontal Associates,
Appellants


v.


Kirsten Husak,

Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. D-1-GN-03-003418, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N


 This dental malpractice case arises from the bilateral severance of appellee Kirsten
Husak's lingual nerve during a procedure to remove her third molars. (1) Appellant Charles Leonard
Dolce, D.D.S., M.S., performed the procedure. Husak brought suit alleging negligence against
Dr. Dolce and his employer, appellant Austin Periodontal Associates, Inc. f/k/a C. Leonard Dolce,
D.D.S., M.S., Inc. (2) After an eight-day jury trial, the jury found Dr. Dolce negligent and awarded
Husak damages. The trial court rendered judgment on the verdict. In five issues, appellants contend
that the trial court's judgment should be reversed and that they should be granted a new trial. For
the reasons that follow, we overrule their issues and affirm the judgment.


FACTUAL AND PROCEDURAL BACKGROUND


 Husak's general dentist Tommy Thomson referred Husak to Dr. Dolce to have crown
lengthening done on two of her teeth. (3) During the preoperative appointment, Dr. Dolce and Husak
discussed and agreed that Dr. Dolce would remove her third molars at the same time.

 The surgery took place in April of 2002. During the removal of her third molars,
Dr. Dolce bilaterally severed Husak's lingual nerve. He also broke a burr (4) in her mouth and did not
inform Husak after the surgery that he was unable to find the broken piece. From the surgery, Husak
suffered infection, dry socket, and total anesthesia of the front two-thirds of her tongue. Dr. Dolce
referred Husak to Dr. James Fuselier, an oral surgeon in Austin, for further treatment, including to
treat her infection. Dr. Fuselier referred Husak to Dr. Donald Cohen, an oral surgeon in Houston
with postsurgical training in oral and maxillofacial surgery. Dr. Cohen attempted microsurgical
repair on the left side of Husak's lingual nerve in August and the right side in October, but the
repairs were unsuccessful.

 Husak sued Austin Periodontal alleging multiple theories of negligence in bilaterally
severing her lingual nerve. Husak's theories included that the removal of her third molars was
medically unnecessary and that Dr. Dolce negligently removed her third molars by his incisions or,
alternatively, by his drilling. Husak alleged that Dr. Dolce's incisions were below the standard of
care because they were made in an area of her mouth where the lingual nerve was known to be
located and that the incisions caused her injury. (5) Alternatively, Husak alleged that Dr. Dolce
improperly drilled into the area of her mouth where the lingual nerve was known to be located and
that the drilling was the cause of her injury.

 At trial, Husak and her former boyfriend, John McCarthy, testified concerning
Husak's physical and mental condition before and after the surgery and the effect the injury has had
on her. Husak also presented expert opinion testimony from Dr. Cohen, Dr. Thomson, and
Dr. Robert W. Staley, Jr., D.D.S., an oral and maxillofacial surgeon from Oregon. Appellants'
defensive theory to the jury was that severance of the lingual nerve was an inherent risk of the
procedure, that Dr. Dolce's technique was within the standard of care, and that he severed Husak's
lingual nerve during the procedure because the nerve was in anatomically aberrant locations on both
sides of her mouth. Dr. James T. Mellonig, D.D.S., a periodontist and professor at the University
of Texas Health Science Center in San Antonio, testified as appellants' expert.

 The trial court submitted a broad form negligence question to the jury--"Did the
negligence, if any, of C. Leonard Dolce, D.D.S., M.S., proximately cause the injury in question?" 
The jury answered, "Yes." The jury awarded the following amounts in response to the damages
question: (i) $45,879.75 for medical care expenses in the past; (ii) $50,000 for physical pain and
mental anguish sustained in the past; (iii) $200,000 for mental anguish that, in reasonable
probability, Husak will sustain in the future; (iv) $19,500 for physical impairment sustained in the
past; (v) $150,000 for physical impairment that, in reasonable probability, Husak will sustain in the
future; and (vi) $6,000 for loss of earning capacity sustained in the past. (6) Based on the verdict and
the trial court's ruling as a matter of law that Dr. Dolce was acting within the course and scope of
his employment, the trial court entered judgment against appellants for $503,923.59, which included
the damages found by the jury plus pre-judgment interest. This appeal followed.


ANALYSIS


 Austin Periodontal contends that the judgment should be reversed and a new trial
granted because (i) the trial court abused its discretion by excluding certain testimony by Dr. Cohen,
the subsequent treating periodontist; (ii) the trial court abused its discretion by refusing to provide
a "bad result" instruction in the jury charge; (iii) the evidence was legally and factually insufficient
to support causation and damages; (iv) the trial court abused its discretion by ruling as a matter of
law that Dr. Dolce was acting within his scope of employment when he performed the surgery; and
(v) the trial court abused its discretion in redacting informed consent forms and limiting informed
consent evidence.



Standard of Review

 Appellants' complaints on appeal include that the trial court abused its discretion in
excluding evidence and in denying a requested jury instruction. See Larson v. Downing, 197 S.W.3d
303, 304-05 (Tex. 2006) (admission or exclusion of expert evidence is a matter within the trial
court's discretion); In re V.L.K., 24 S.W.3d 338, 341 (Tex. 2000) (error in the jury charge is
reviewed under an abuse of discretion standard). A trial court abuses its discretion when it acts
without regard to any guiding rules or principles. Downing, 197 S.W.3d at 304-05; City of
Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1995).

 To reverse a judgment based on a claimed error in either an evidentiary ruling or in
the jury charge, a party must show that the error probably resulted in the rendition of an improper
judgment. See Tex. R. App. P. 44.1(a)(1); Interstate Northborough P'ship v. State, 66 S.W.3d 213,
220 (Tex. 2001) (exclusion of evidence); Union Pac. R.R. Co. v. Williams, 85 S.W.3d 162, 166
(Tex. 2002) (error in refusing an instruction); Niemeyer v. Tana Oil & Gas Corp., 39 S.W.3d 380,
387 (Tex. App.--Austin 2001, pet. denied) (error in jury charge). To determine whether excluded
evidence probably resulted in an improper judgment, we review the entire record and usually require
the complaining party to demonstrate that the judgment turns on the evidence that was excluded. 
Interstate Northborough, 66 S.W.3d at 220; Alvarado, 897 S.W.2d at 753-54; Perez v. Embree
Constr. Group, Inc., 228 S.W.3d 875, 884 (Tex. App.--Austin 2007, pet. filed) (for improper
exclusion of evidence to be reversible, "erroneously excluded evidence must have been controlling
on a material issue;" quoting Elliott v. Elliott, 21 S.W.3d 913, 922 (Tex. App.--Fort Worth 2000,
pet. denied)). "Error in the jury charge is reversible if, when viewed in light of all the circumstances,
it amounts 'to such a denial of rights of the complaining party as was reasonably calculated and
probably did cause the rendition of an improper judgment.'" Niemeyer, 39 S.W.3d at 387 (quoting
Howell Crude Oil Co. v. Donna Refinery Partners, Ltd., 928 S.W.2d 100, 110 (Tex. App.--Houston
[14th Dist.] 1996, writ denied)).

 Appellants also raise challenges to the legal and factual sufficiency of the evidence. 
A legal sufficiency challenge may only be sustained when the record discloses one of the following
situations: 

 

 (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of
law or of evidence from giving weight to the only evidence offered to prove a vital
fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla;
[or] (d) the evidence establishes conclusively the opposite of the vital fact.



City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005) (quoting Robert W. Calvert, "No
Evidence" & "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960)). In
determining whether a finding is supported by legally sufficient evidence, we view the evidence in
the light most favorable to the finding, "crediting favorable evidence if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not." Id. at 807. We indulge every
reasonable inference that would support the finding. Id. at 822; Tarrant Reg'l Water Dist. v. Gragg,
151 S.W.3d 546, 552 (Tex. 2004).

 In reviewing the factual sufficiency of the evidence, we consider and weigh all the
evidence presented at trial, including any evidence contrary to the judgment. Plas-Tex, Inc. v. U.S.
Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We
set aside a finding for factual insufficiency if it is "so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust." Cain, 709 S.W.2d at 176.


Exclusion of Deposition Excerpts from Dr. Cohen

 In the first issue, Austin Periodontal complains that the trial court abused its
discretion in excluding two passages from Dr. Cohen's testimony that went to his credibility. (7) 
Austin Periodontal complains that the jury should have been allowed to hear Dr. Cohen's testimony
that he had performed only one other lingual nerve repair as a lead surgeon and that he also testified
for the plaintiff in that case. In the first passage, Dr. Cohen testified that he had been involved in
surgical repair of the lingual nerve in approximately seven other cases and that he worked with
another surgeon on those cases. Austin Periodontal, however, agreed to exclude the first passage
after Husak objected to its inclusion. In the second passage, Dr. Cohen testified that he served as
the lead surgeon in one other lingual nerve repair case and that he was hired to serve as the plaintiff's
expert in that case. In response to Husak's objection to the second passage's inclusion, the trial court
overruled the objection except for one question and answer. (8)

 Despite the favorable ruling on the second passage, Austin Periodontal did not
attempt to offer the passage into evidence but made an offer of proof of both passages later in
the trial. Austin Periodontal made the offer of proof during a discussion with the trial court
and opposing counsel concerning how the jury would be allowed to view deposition testimony. 
After the parties agreed that the deposition testimony would be available for the jury to review by
DVD but not accompanied by a written transcript, Austin Periodontal made the offer of proof of the
two passages:


 Appellants' counsel: . . . I want to make another offer of proof on Doctor
Cohen's testimony. It's on page 76 line 9 through
page 79 line 14 [first passage]. Page 106 line 2, page
107, line 4 [second passage].


 The court: Objection or --


 Appellants' counsel: Offer of proof. This is the testimony regarding that
he's been the lead surgeon in two cases. And in both
cases he wrote a[n] operative report, both cases hired
as expert. I actually just took the [deposition] pages
out. Wanted to make an exhibit so it's clear what I
am offering. Your Honor I am offering defendant's
exhibit 65.


 The court: 65 will be admitted in the pile that doesn't go to the
jury. . . .



In the discussion with the trial court, Austin Periodontal did not attempt to admit the exhibit of
the passages as evidence or request a ruling from the trial court on whether the evidence should
be excluded, but requested that the trial court admit the exhibit as an offer of proof. See Tex. R.
Evid. 103. The trial court granted Austin Periodontal's request and admitted the exhibit as an
offer of proof.

 Because the trial court only excluded one question and answer out of the second
passage, we limit our review to this one question and answer. See Tex. R. App. P. 33.1(a) (to
preserve error for the exclusion of evidence, a party must seek to introduce the evidence during the
evidentiary portion of the trial and obtain an adverse ruling); Estate of Veale v. Teledyne, 899 S.W.2d
239, 242-43 (Tex. App.--Houston [14th Dist.] 1995, writ denied). We conclude that appellants have
failed to demonstrate that the judgment turned on this narrow portion of testimony. See Tex. R. App.
P. 44.1(a); Interstate Northborough, 66 S.W.3d at 220; Alvarado, 897 S.W.2d at 753-54; Perez,
228 S.W.3d at 884. We overrule Austin Periodontal's first issue.


"Bad Result" Jury Instruction

 In the second issue, appellants contend that the trial court abused its discretion in
refusing to provide the jury their proposed "bad result" instruction:

 

 A finding of negligence may not be based solely on evidence of bad result to the
patient in question, but such a bad result may be considered by you, along with other
evidence, in determining the issue of negligence; you shall be the sole judge of the
weight, if any, to be given any such evidence.



The proposed instruction tracks the pattern jury charge bad result instruction for actions filed before
September 1, 2003. See Texas Pattern Jury Charges--Malpractice, Premises, & Products PJC 50.7
(2006 ed.) (Evidence of Bad Result). Pursuant to the applicable statute, however, it was within the
trial court's sole discretion to determine whether the instruction was reasonably applicable to the
facts and whether to include it. See former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 7.02(c), Act of
May 24, 1989, 71st Leg., R.S., ch. 1027, § 28, 1989 Tex. Gen. Laws 4128, 4145 (repealed Sept. 1,
2003) ("Jury Instruction Authorized in Certain Cases"); (9) see also Williams v. Viswanathan,
64 S.W.3d 624, 628-29 (Tex. App.--Amarillo 2001, no pet.) (submission of bad result instruction
reviewed under abuse of discretion standard).

 Husak contends that the statute does not apply because Dr. Dolce did not present
evidence that he was a physician and Austin Periodontal Associates, Inc. did not present evidence
that it was a hospital. (10) We agree. The former statute is expressly limited to jury trials "involving
a health care liability claim against a physician or hospital." See former Tex. Rev. Civ. Stat. Ann.
art. 4590i, § 7.02(a). Dr. Dolce testified that he was a dentist and periodontist and that he practiced
his profession through Austin Periodontal Associates, Inc. A physician is defined as a "person
licensed to practice medicine in this state" or a professional association or other legal entity
organized by an individual physician or group of physicians. See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001(23) (West 2005); former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.03(8), Act of June 16,
1977, 65th Leg., R.S., ch. 817, § 1.03, 1977 Tex. Gen. Laws 2039, 2041 (repealed Sept. 1, 2003). 
A hospital is defined as a duly licensed public or private institution as defined in chapter 241 of the
health and safety code or licensed under chapter 577 of the health and safety code. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.001(16) (West 2005); former Tex. Rev. Civ. Stat. Ann. art. 4590i,
§ 1.03(5) (repealed Sept. 1, 2003). In these circumstances, we conclude that the trial court did not
abuse its discretion in denying appellants' proposed instruction. See Louisiana-Pacific Corp.
v. Knighten, 976 S.W.2d 674, 676 (Tex. 1998) (trial courts have great latitude and considerable
discretion to determine necessary and proper jury instructions). We overrule Austin Periodontal's
second issue.


Sufficiency of the Evidence

 In the third issue, Austin Periodontal contends that the evidence was legally and
factually insufficient to support the jury's judgment and damage award. Specifically, Austin
Periodontal contends that the evidence was legally and factually insufficient to support the jury's
finding of negligence because there was no evidence or insufficient evidence of (i) cause in fact, and
(ii) the jury's findings on damages for physical pain and mental anguish sustained in the past, for
future mental anguish, and for future physical impairment. We first consider whether the evidence
was legally and factually sufficient to support the jury's finding of cause in fact.


 1. Cause In Fact

 Cause in fact is a component of proximate cause in a negligence action. See IHS
Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004). (11) Cause
in fact is not established "where the defendant's negligence does no more than furnish a condition
which makes the injuries possible." Id. at 799. Cause in fact is established "when the act or
omission was a substantial factor in bringing about the injuries, and without it, the harm would
not have occurred." Id. The "causal connection" must be "based upon 'reasonable medical
probability,' not mere conjecture, speculation or possibility." Bradley v. Rogers, 879 S.W.2d 947,
954 (Tex. App.--Houston [14th Dist.] 1994, writ denied) (quoting Duff v. Yelin, 751 S.W.2d 175,
176 (Tex. 1988)). "Reasonable medical probability" means the injury "was more likely than not"
a result of the negligent action. Id. at 954. To prove reasonable medical probability, reasonable
inferences are permissible, and a plaintiff is not required to exclude every other reasonable
hypothesis. Id.

 Austin Periodontal contends that there is a lack of evidence of the location of Husak's
lingual nerve when it was severed and of what actually caused the nerve's severance. Although
Dr. Staley and Dr. Cohen testified Husak's injuries occurred from Dr. Dolce's actions that fell below
the standard of care, Austin Periodontal contends that neither expert testified definitively to the
actual action that caused the severance--whether it was the incision, the drilling, or some other
action--or to the precise location that Husak's lingual nerve was severed on either side of her mouth. 
We conclude that the record contains more than a scintilla of evidence to support the jury's finding
of cause in fact. See City of Keller, 168 S.W.3d at 810; Gragg, 151 S.W.3d at 552.

 Dr. Cohen testified that in his opinion, based upon reasonable medical probability, 
Dr. Dolce's technique caused Husak's permanent damage. Dr. Cohen testified that Husak's injuries
were caused by Dr. Dolce's procedures that fell below the standard of care, including the incisions
that he made "straight back," his retraction of the lingual flap, the burring and the removal of bone
on the lingual side, and traumatizing the tissue. Dr. Cohen testified that the line of scar tissue on
the left side of Husak's mouth, the first side that he attempted to repair, was not consistent with a
standard lateral incision and that the standard lateral approach should have avoided even the "most
odd of anatomical variations." According to Dr. Cohen, the lingual nerve is in the same area
in everyone's mouth but there are individual variations within that area and that the standard lateral
incision is designed to avoid the known areas. The standard lateral incision is made over bone,
goes back from the second molar, and curves toward the cheek or buccal to avoid the known areas. 
Dr. Cohen also testified that Dr. Dolce's injection of anesthesia made during the procedure and
Husak's subsequent infection did not cause Husak's injuries to her lingual nerve. 

 On cross-examination, Dr. Dolce testified that he caused the severance of the nerve
bilaterally during the procedure to remove Husak's third molars:

 

 Q: And in the opening of this case a couple of days ago, your attorney stated that
you never disputed that you caused Mrs. Husak's lingual nerve injury; is that
correct?


 A: Right.


 Q: And do you agree?


 A: I agree.


 Q: And you agree that you did something that caused her injuries, correct?


 A: Yes.



Dr. Mellonig also testified that Dr. Dolce's surgical instruments caused Husak's injury and that the
lingual nerve was probably severed by the "blade of the knife" in the initial incision. He testified
that was the only way to sever the nerve because "the nerve is very--very tough, so it had to be cut." Husak was not required to disprove every reasonable hypothesis of the cause in fact
of the severance. See Bradley, 879 S.W.2d at 954. Husak also was not required to choose between
alternative theories of how Dr. Dolce severed the nerve. See Webb v. Jorns, 488 S.W.2d 407, 410-11
(Tex. 1972) (plaintiff proved prima facie negligence case by evidence that cardiac arrest caused by
overdose or lack of proper oxygenation of the patient). It was for the jury to resolve inconsistencies
of any one witness to determine the cause of the injury. See McGilliard v. Kuhlmann, 722 S.W.2d
694, 697 (Tex. 1986); Webb, 488 S.W.2d at 411. We conclude the evidence was legally sufficient
to support the jury's finding of cause in fact.

 Reviewing all the evidence presented at trial, we also conclude that the evidence on
cause in fact was not "so contrary to the overwhelming weight of the evidence as to be clearly wrong
or unjust." See Cain, 709 S.W.2d at 176. Dr. Dolce testified on cross-examination that his sole
defense was that Husak's injury occurred in the absence of negligence because Husak's nerve was
in an aberrant location on both sides of her mouth:

 

 Q: Now, you're claiming in this suit, as your only defense to you slicing through
her nerves, that her nerves were aberrant on both sides. Correct?


 A: Yes.



To support the aberrant location defense, appellants relied on Dr. Dolce's testimony and Dr. Cohen's
surgery report from the attempted repair of the left side of Husak's mouth. Dr. Dolce testified that
the body generally mirrors itself between the right and left side, and appellants contend that
Dr. Cohen in his report found Husak's lingual nerve in an aberrant location on the left side--within
the third molar socket. Based on the nerve's location within the third molar socket on the left side
then, appellants contend that the location of Husak's lingual nerve on the right side also was in an
aberrant location, and that the nerve was severed because it was in an aberrant location on both sides,
not because Dr. Dolce was negligent. None of the experts, however, were aware of another case in
which a patient's lingual nerve was severed bilaterally. The testimony also was disputed regarding
the interpretation and implications of Dr. Cohen's statement in his report regarding the nerve's
location in the scar tissue when he performed the subsequent repair. Dr Cohen testified that when
he attempted the repair on the left side, he did not find an abnormal course of Husak's lingual nerve:


 Q: When you dissected her nerve, did you find any abnormal course of her nerve
on the left side?


 A: No.



Dr. Cohen further provided extensive testimony that the procedure for removing third molars is
designed to avoid all known aberrations. Dr. Staley also testified that the procedure is designed to
avoid the lingual nerve, that the lingual nerve has never been demonstrated to be in the location
Dr. Dolce claimed, and that if Husak's nerve was in that location, Husak would have been aware of
the presence of the nerve because she would have experienced pain and discomfort in a manner
inconsistent with her actual history. (12)

 It was within the jury's province to conclude that Husak's nerve was located in a
known area and to credit the expert opinion testimony that it was Dr. Dolce's procedures that fell
below the standard of care that caused the injury. See Bronwell v. Williams, 597 S.W.2d 542, 546-47
(Tex. Civ. App.--Amarillo 1980, writ ref'd n.r.e.) (fact issue for jury's resolution whether common
duct in normal or abnormal location); see also Grider v. Naaman, 83 S.W.3d 241, 245-46
(Tex. App.--Corpus Christi 2002), rev'd on other grounds, 126 S.W.3d 73, 74-75 (Tex. 2003)
(judgment for defense in medical malpractice suit reversed because no evidence to support sole
defense that patient had abnormal anatomy). The jury heard a range of expert testimony concerning
the cause of Husak's injury. It was within the province of the jury to weigh the expert opinion
testimony and to determine which expert witness should be credited. See Golden Eagle Archery, Inc.
v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003) (jury remains sole judge of witnesses' credibility and
the weight to be given their testimony); McGilliard, 722 S.W.2d at 697 (jury can choose to believe
one witness over other witnesses or resolve inconsistencies in their testimony). We conclude the
evidence was legally and factually sufficient to support a finding of cause in fact. We next consider
whether the evidence was legally and factually sufficient to support the jury's findings on damages.


 2. Damages

 Austin Periodontal contends that the evidence was legally and factually insufficient
to support the damages award of $50,000 for physical pain and mental anguish sustained in the past,
$200,000 for mental anguish that in reasonable probability Husak will sustain in the future, and
$150,000 for physical impairment that in reasonable probability Husak will sustain in the future. 
Austin Periodontal's theory to the jury was that, although Husak suffered a severe injury, she has
recovered and is now maintaining a lifestyle similar to that before her injury. Austin Periodontal
contends that Husak does not intend to seek counseling for the injury, that she has regained some
sensation and taste in her tongue after the surgery, that her eating habits are back to normal, that she
took a course in conversational Japanese, and that she has decided to pursue a graduate degree. We
conclude that the evidence is legally and factually sufficient to support the damages awarded.

 As to the award of damages for physical pain, a jury is given considerable discretion
in awarding amounts appropriate for such damages; there are no objective guidelines to assess the
monetary equivalent of pain and suffering resulting from physical injury. See Living Ctrs. of Tex.,
Inc. v. Penalver, 217 S.W.3d 44, 54 (Tex. App.--San Antonio 2006, pet. dism'd). As to the award
of damages for mental anguish, evidence of "'the nature, duration, and severity'" of a plaintiff's
mental anguish and the substantial disruption of a plaintiff's daily routine support an award of
damages for mental anguish. See Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788, 797 (Tex. 2006)
(evidence found legally sufficient to support damages for mental anguish; quoting Parkway Co.
v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995)).

 The award of $50,000 for past pain and mental anguish represents approximately
$11,000 per year for the four and one-half years from the surgery to the time of trial. During that
period, Husak had two subsequent operations to attempt the repair of her lingual nerve. Husak
testified to her depression, pain, and anxiety during this period. She testified that she was unable to
eat, sleep or open her mouth for weeks after the surgery and that she could not speak correctly for
months despite having a job that required her to make presentations. Husak testified what it was like
for her to eat after the surgery (13)--that she has no taste, that she cannot tell hot from cold, and that
she has had to avoid many foods because, in trying to chew them, she cannot feel when she bites her
tongue. She testified what it has been like for her to talk--that when she gets tired, she has a hard
time enunciating words, and she bites her tongue and does not know it, causing blood to pool in her
mouth. McCarthy testified about his observations of Husak's physical and mental condition before
and after the surgery, and his testimony was consistent with Husak's. Based on this evidence, we
conclude there was more than a scintilla of evidence to support the damage finding for past pain and
mental anguish. See City of Keller, 168 S.W.3d at 810; Gragg, 151 S.W.3d at 552.

 Reviewing all the evidence, we also conclude that the jury's finding is not "so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." See Cain,
709 S.W.2d at 176. Austin Periodontal presented evidence that Husak stated during her treatment
that she thought that her senses in her tongue were improving and that she has continued to lead an
active life. Dr. Cohen, however, explained Husak's sensations during her treatment as "phantom." 
Husak's activities after her injury, including pursuing a graduate degree and taking conversational
Japanese, do not negate the pain and the mental anguish that Husak experienced from her injury. 
We conclude the evidence was legally and factually sufficient to support the jury's damage award
for past pain and mental anguish. (14)

 As to the jury award of $200,000 for future mental anguish, the jury heard evidence
that at the time of the trial, Husak was expected to live an additional 44.5 years. The amount
awarded for future mental anguish represents approximately $4,500 per year for the remainder of her
life. Dr. Staley testified that he tested Husak's sense of touch at the time of trial by blindfolding her
and then sticking a needle in her tongue and that she did not flinch. Dr. Dolce witnessed the test and
confirmed that she did not flinch. Dr. Cohen testified that the attempted repairs were unsuccessful,
that Husak's injury was permanent, and what Husak's life will be like:


 It's--it's just losing a part of your body. It's like if you don't have any feeling in
your hand, and that--which most people could--I mean, like, if--when your hand
falls asleep, it's pretty disconcerting that you look over and you touch it and you feel
you touch it, but you don't feel that it's there. Well, how would that be if it was like
that all the time.



Husak testified to her continued depression and anxiety. Husak testified that she is depressed by the
smell of food, miserable and embarrassed and that "it's never going to end."

 Because the injury is permanent, there was evidence that Husak's daily routine will
remain disrupted and that she will continue to have mental anguish in the future, including from the
broken burr that remains in her mouth. On this record, we conclude there is more than a scintilla of
evidence to support the damage finding for future mental anguish. See City of Keller, 168 S.W.3d
at 810; Gragg, 151 S.W.3d at 552. Although Austin Periodontal provided evidence that Husak does
not intend to seek counseling, we conclude that the damage award for future mental anguish from
Husak's injury is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust." See Cain, 709 S.W.2d at 176.

 As to the jury's award for future physical impairment of $150,000, this amount
represents approximately $3,400 per year for the remainder of Husak's life. To recover damages for
physical impairment, a plaintiff must show that the effect of the physical impairment is "substantial
and extend[s] beyond any pain, suffering, mental anguish, lost wages, or diminished earning
capacity." See Patlyek v. Brittain, 149 S.W.3d 781, 786 (Tex. App.--Austin 2004, pet. denied)
(quoting Golden Eagle, 116 S.W.3d at 772). Recoverable damages for physical impairment include
damages for the loss of a plaintiff's former lifestyle or "loss of enjoyment of life." See id. at
785 (quoting Golden Eagle, 116 S.W.3d at 764-65, 772). The focus is on a plaintiff's ability to
engage in specific non-work related activities--whether the impediments are obvious or whether
the plaintiff presented evidence of non-work activities that the plaintiff can no longer perform. Id.
at 787.

 Husak's impediments are obvious and substantial. After the surgery, Husak lost the
ability to use her tongue for cleaning and for taste or to identify things in her mouth. At the time of
trial, Husak testified that she continues to have difficulty eating and communicating. Husak also
presented evidence that she no longer engages in non-work related activities that she participated in
before her injuries. Husak and McCarthy described Husak's life prior to the severance of her lingual
nerve as socially active, including her hobbies of going out to eat with friends, gourmet cooking, and
strenuous exercise and bicycling. Husak testified that she no longer enjoys or participates in these
hobbies. McCarthy testified that Husak's only hobby after the surgery is reading. We conclude that
there is more than a scintilla of evidence to support the finding of damages for future physical
impairment. See City of Keller, 168 S.W.3d at 810; Gragg, 151 S.W.3d at 552. Although Austin
Periodontal provided evidence that Husak is pursuing a graduate degree and taking a conversational
class in Japanese, we conclude that the damage award for future physical impairment is not "so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." See Cain,
709 S.W.2d at 176.

 Having found the evidence legally and factually sufficient to support the jury's
finding of cause in fact and the amount of damages awarded, we overrule Austin Periodontal's third
issue.


Scope of Employment

 In the fourth issue, Austin Periodontal alleges that the trial court abused its discretion
by ruling as a matter of law that Dr. Dolce was within the course and scope of his employment when
he extracted Husak's third molars.

 When reviewing a directed verdict on a material question presented, we determine
whether there is any evidence of probative force that raises a fact issue. See Szczepanik v. First S.
Trust Co., 883 S.W.2d 648, 649 (Tex. 1994). We consider all the evidence in the light most
favorable to the party against whom the verdict was directed, disregarding all contrary evidence and
inferences and giving the party the benefit of all reasonable inferences created by the evidence. Id. 
If there is any conflicting evidence of probative value, the directed verdict is improper and the case
must be reversed and remanded for jury determination of that issue. Id.

 Husak sued Austin Periodontal Associates, Inc. as the legal entity vicariously liable
for Dr. Dolce's negligent acts. Under the theory of respondeat superior, an employer may be
vicariously liable for the negligent acts of its employee if the employee's actions are within the
course and scope of employment. See Baptist Mem. Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947
(Tex. 1998). During cross-examination, Dr. Dolce testified that he was employed by C. Leonard
Dolce, D.D.S., Inc., at the time he performed the procedure on Husak, and that he was acting within
the scope of his employment:

 

 Q: Were you within the scope and employment of the corporation at the time?


 A: Scope and employment? Yes. The corporation--I mean, I'm practicing my
profession in the corporation.


 Q: Right. And what I'm trying to get at is that you weren't doing something that
you weren't supposed to be as an employee of the corporation at the time that
you removed her teeth.


 A: No.



Appellants did not offer contradictory evidence that Dr. Dolce was doing something other than
practicing dentistry in the furtherance of his employer's business when he performed the procedure
on Husak. (15) We conclude that the trial court did not abuse its discretion in ruling as a matter of law
that Austin Periodontal Associates, Inc. was vicariously liable for Dr. Dolce's negligence. We
overrule Austin Periodontal's fourth issue.


Informed Consent

 In the fifth issue, Austin Periodontal contends that the trial court abused its discretion
in refusing to admit the informed consent forms of Dr. Cohen and Dr. Dolce and evidence that Dr.
Dolce provided Husak with an informed consent form before the procedure to extract her third
molars. The consent forms included damage to nerves and numbness as inherent and potential risks. 
Austin Periodontal contends that this evidence was relevant to the issue of whether Husak's injury
could have occurred in the absence of negligence.

 But, Austin Periodontal was allowed to offer evidence of Husak's informed consent
and the consent forms. The jury heard testimony from Dr. Dolce that Husak signed his consent form. 
The redacted consent forms of Dr. Cohen and Dr. Dolce were also admitted as exhibits, and the
admitted portions of the forms included the listed risks. Dr. Dolce's redacted form included in the
listed "Principle Risks and Complications" that the patient could have "transient but occasional
permanent numbness of the . . . tongue." Similarly, Dr. Cohen's redacted form provided:


 Dr. Cohen has explained to me that there are certain inherent and potential risks in
any treatment plan or procedure, that may include, but not necessarily be limited to
. . . [i]njury to the nerves of the jaw resulting in numbness or tingling of the lip, chin,
gums, cheek, teeth and/or tongue on the operated side; this may persist for several
weeks, months, or in remote instances permanently.


The record confirms that appellants were allowed to present this evidence (16) on informed consent and
inherent risks to the jury to support their defensive theory that the injury could have occurred in the
absence of negligence. (17)

 We also cannot conclude that the trial court abused its discretion by redacting the
consent forms of Dr. Dolce and Dr. Cohen or that any excluded evidence on informed consent was
controlling on a material issue to support a finding that the exclusion probably resulted in an
improper judgment. See Perez, 228 S.W.3d at 884. Husak's theories of recovery did not include
that Dr. Dolce failed to inform her of the risks of the procedure. The controlling issue was not
whether she received information about the risks of the procedure, but whether Dr. Dolce's
negligence caused the severance of her lingual nerve. Austin Periodontal was allowed to present to
the jury the language from both consent forms that a possible risk was permanent numbness to the
tongue. We overrule Austin Periodontal's fifth issue.



CONCLUSION

 Having overruled appellants' issues, we affirm the judgment.



 __________________________________________

 Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: January 25, 2008
1. According to the testimony at trial, the lingual nerve provides the sense of taste and touch
to the anterior two-thirds of the tongue and is located on the tongue side of the lower third molars
on both sides of the mouth. Third molars are commonly referred to as wisdom teeth and are the last
tooth of the full set on each half of the jaw. Unless otherwise specified, we draw on trial testimony
for technical/medical definitions and explanations.
2. We refer to appellants Austin Periodontal Associates, Inc. f/k/a C. Leonard Dolce, D.D.S.,
M.S., Inc. and Charles Leonard Dolce, D.D.S., M.S., individually and d/b/a Periodontal Associates
collectively as "Austin Periodontal" or "appellants." We refer to appellant Charles Leonard Dolce,
D.D.S., M.S., as "Dr. Dolce."
3. The crown lengthening did not involve Husak's third molars but two of her other teeth.
Crown lengthening is a procedure that is designed to provide more tooth structure above the gum
line before placing a crown on a tooth.
4. A burr is the rotary cutting portion of the drill.
5. The lingual nerve's location varies from person to person, but there are areas in the mouth
where the lingual nerve is known to be located. The experts at trial agreed that the procedure for
removing third molars is specifically designed to avoid the known areas.
6. The jury did not award any amount for disfigurement sustained in the past.
7. Dr. Cohen's testimony was presented by video deposition.
8. The question and answer that the trial court excluded concerned the other lingual nerve
damage case in which Dr. Cohen was the lead surgeon:

 

 Q: And you went further and said that you believe that the original treating, whether it
be dentist or oral surgeon, was actually negligent in--


 A: From what I--you know, from what I recall--because I know that case was
involved in litigation also. I can't specifically tell you what I dictated into the
operative report at that time or what my findings were or my records because
it was quite a while ago.

9. The former statute read:


 Sec. 7.02. JURY INSTRUCTION AUTHORIZED IN CERTAIN CASES.


 (a) In a jury trial involving a health care liability claim against a physician or hospital
for injury to or death of a patient in which the court determines that the following
instruction is reasonably applicable to the facts, the court shall provide the following
instruction in the court's charge to the jury:

 

 "A finding of negligence may not be based solely on evidence of a bad result to
the patient in question, but such a bad result may be considered by you, along
with other evidence, in determining the issue of negligence; you shall be the sole
judges of the weight, if any, to be given to any such evidence."

 

 (b) Nothing in Subsection (a) of this section shall affect the existing law regarding
the applicability or nonapplicability of the doctrine of res ipsa loquitur to a health
care liability claim.

 

 (c) The determination of whether the instruction authorized by Subsection (a) of this
section is reasonably applicable to the facts shall be made by the trial court in its sole
discretion, and such determination by the trial court shall be reviewable by an
appellate court only for an abuse of such discretion.


Act of May 24, 1989, 71st Leg., R.S., ch. 1027, § 28, 1989 Tex. Gen. Laws 4128, 4145 (repealed
Sept. 1, 2003) ("Jury Instruction Authorized in Certain Cases"). 


 Because Husak filed suit prior to September 1, 2003, former article 4590i of the Medical
Liability and Insurance Improvement Act governs. See Act of June 2, 2003, 78th Leg., R.S., ch. 204,
§ 23.02(d), 2003 Tex. Gen. Laws 847, 899 (prior law remains in effect for actions filed before
September 1, 2003). Under the current statute, a trial court on "any action on a health care liability
claim that is tried by a jury" must include a "bad result" instruction. See Tex. Civ. Prac. & Rem.
Code Ann. § 74.303(e)(2) (West 2005).
10. Husak also argued to the trial court that a bad result instruction should not be given
because the court had refused her requested res ipsa locutor instruction. She does not make this
same argument on appeal.
11. The elements of a negligence cause of action are the existence of a legal duty, breach of
that duty, and damages proximately caused by the breach. IHS Cedars Treatment Ctr. of DeSoto,
Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004). The two elements of proximate cause are
cause in fact and foreseeability. Id. The proximate cause instruction to the jury read:


 "Proximate cause," when used with respect to the conduct of C. Leonard
Dolce, D.D.S., M.S., means that cause which, in a natural and continuous sequence,
produces an event, and without which cause such event would not have occurred. In
order to be a proximate cause, the act or omission complained of must be such that
a dentist using ordinary care would have foreseen that the event, or some similar
event, might reasonably result therefrom. There may be more than one proximate
cause of an event.
12. Dr. Staley testified:


 And the nerve is not a small nerve. It's about the size of a piece of spaghetti. It's not
like it's a fine hair of a nerve. If it happened to be in that area the patient would
know it. Every time they chewed something hard back there; piece a crust, or
something. And they happen to push on that they would feel a[n] electric shock on
the tongue. The patient would know that. . . . The nerve has never been demonstrated
to loop back there. It can be high. It can be low. Or it can be out this way, but it
never comes up here. That's specifically the reason why the surgery for the incision
part of it, has been designed to make the incision out there.
13. Husak testified as to her diet after the surgery:


 Q: This may sound strange, but some people may think this is a neat diet. Can
you tell me what kind of diet you think this is?


 A: This is a forced diet for the rest of my life. I didn't need to lose any weight,
and I have. And I don't have a choice now. I can't go off this diet. It's going
to last forever.


 Q: Can you tell me what tomatoes taste like?


 A: They taste wet.


 Q: What about bread?


 A: Well, I can't even eat chunky bread, like French bread, because I run the risk
of chomping on my tongue. But, in any case, there's no taste to it. It's just
lumps.


 Q: What about milk?


 A: Milk tastes exactly the same as water.


 Q: What about Diet Coke?


 A: Tastes like bubbles.


 Q: What about carrots?


 A: Well, I have to chop them up very small, again, to make sure I'm not
chomping on my tongue. I get some sort of a muted memory of a taste of
them, but not--nothing like what it used to be.


* * *


 Q: Do you order pizza anymore?


 A: No.


 Q: Why not?


 A: There's a possibility of burning myself with the hot cheese, and I can't taste
the cheese anyway. I can't taste the toppings properly. There's--there's
just--it's too depressing. It's--there's no point.


* * *


 Q: Would you tell the jury what it's like to live with a numb tongue, not able to
tell hot or cold with your tongue, and not ever able to taste your food
normally?


 A: It's really miserable because I know that when I get older and my other senses
aren't working so well, I'll get no pleasure out of my food. I get no pleasure
out of it now. It's embarrassing to talk to people about, and it's never going
to end.
14. In closing arguments, appellants' counsel suggested to the jury an award of $50,000 for
past pain and mental anguish assuming a finding of negligence.
15. Dr. Dolce testified that he changed the entity that he practiced his profession through from
C. Leonard Dolce, D.D.S., Inc. to Austin Periodontal Associates, Inc. shortly after Husak's
operation. From his testimony, the entity at the time the procedure was performed was C. Leonard
Dolce, D.D.S., Inc., and, at the time of trial, the entity was Austin Periodontal Associates, Inc. 
Appellees do not contend that Husak sued the incorrect employer.
16. To the extent appellants complain about the exclusion of other evidence on informed
consent, we conclude that they failed to preserve error. See Tex. R. App. P. 33.1(a). During the
motion in limine hearing, the trial court granted Husak's motion regarding evidence of informed
consent, but rulings on motions in limine do not preserve error for appellate review. See Acord
v. General Motors Corp., 669 S.W.2d 111, 116 (Tex. 1984). To preserve error, appellants were
required to seek to admit the evidence during the evidentiary portion of the trial and to obtain an
adverse ruling. See Tex. R. App. P. 33.1(a). This appellants did not do.
17. Appellants contend the trial court compounded its error on informed consent evidence
during Dr. Cohen's testimony. Because Dr. Cohen referred to informed consent, appellants contend
that the trial court erred by not allowing their request to introduce evidence that would have
explained Dr. Cohen's references. But, the trial court stated that it would allow appellants to provide
evidence to prevent the jury from being "left with the impression that Dr. Dolce did something
wrong in not giving a consent form."