Opinion issued September 24, 2009








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00813-CV






BRAY ABARCA AND JUAN CARLOS SANCHEZ, Appellants


V.


SCOTT MORGAN RESIDENTIAL, INC. AND MAURICIO CASTANO,
INDIVIDUALLY AND D/B/A MCC CONSTRUCTION SERVICES,
Appellees






On Appeal from the 80th District Court

Harris County, Texas

Trial Court Cause No. 2006-38686






O P I N I O N

 Appellants, Bray Abarca and Juan Carlos Sanchez, challenge the summary
judgment rendered against them in their suit for negligence, negligence per se, and
breach of contract against Scott Morgan Residential, Inc. ("S.M.R.") and Mauricio
Castano, individually and doing business as MCC Construction Services
(collectively, "Castano"), appellees. In five issues, Bray Abarca and Sanchez argue
that the trial court erred (1) in granting S.M.R.'s motion for summary judgment based
on Chapter 95 of the Texas Civil Practice and Remedies Code (1) because Chapter 95
was not applicable, or, alternatively, because Bray Abarca and Sanchez raised a fact
issue regarding S.M.R.'s retention of control, actual knowledge of a dangerous
condition, and failure to warn; (2) in granting S.M.R.'s and Castano's motions for
summary judgment on the breach of contract claims because Bray Abarca and
Sanchez were third-party beneficiaries of the agreement between S.M.R. and Castano;
(3) in granting S.M.R.'s and Castano's motions for summary judgment on the
common law negligence claims because Bray Abarca and Sanchez raised a fact issue
concerning S.M.R.'s and Castano's liability; (4) in granting S.M.R.'s and Castano's
motions for summary judgment on the negligence per se claims because Bray Abarca
and Sanchez raised a fact issue concerning S.M.R.'s and Castano's liability; and (5)
in granting S.M.R.'s no-evidence motion for summary judgment because Bray Abarca
and Sanchez raised a fact issue concerning S.M.R.'s negligence and breach of
contract.

 We affirm in part and reverse and remand in part.

Background

 On April 14, 2006, Bray Abarca and Sanchez were injured when a scaffold they
were using collapsed while they were performing construction work on property
owned by Feagan Street Casitas, L.P. S.M.R. is a general partner of Feagan Street
Casitas and is in the business of constructing both single and multi-family homes for
sale. Scott Morgan, president of S.M.R., stated in his affidavit that S.M.R. "made all
business decisions (including all decisions relating to construction) for Feagan Street
Casitas, L.P., on behalf of and as the general partner of Feagan Street Casitas, L.P.
during the time that this construction project was underway." Morgan's affidavit also
stated that S.M.R. "served as the general contractor for the construction project and
was in possession of the construction site during the time that the project was being
built. . . ." S.M.R. employed Walter Fisk, who signed agreements on behalf of S.M.R.
but did not spend much time at the construction site, and Ron Harrington, who acted
as S.M.R.'s site superintendent.

 S.M.R., through Walter Fisk, hired Castano to perform some of the
construction work at the Feagan Street Casitas project. S.M.R. and Castano entered
into a "Subcontract Agreement" that detailed the work Castano would be responsible
for performing and required him "to furnish all labor, material, equipment, services
and supervision to complete" the work as described in the addendum to the agreement
entitled "Scope of Work." The Subcontract Agreement contained a total of 26
provisions and provided as follows:

2. MATERIALS AND EQUIPMENT. Subcontractor [Castano] shall
provide all materials as above specified and all tools, accessories,
scaffolding and equipment which may be necessary to properly execute
the Work and to coordinate the Work with the work of other
subcontractors on the Project, including all items necessary or usual in
work of this kind to finish the Work in a good and workmanlike manner
. . . . Subcontractor warrants that all such materials shall be new unless
otherwise specified and, if so required by Contractor [S.M.R.],
Subcontractor shall furnish satisfactory evidence as to the kind and
quality of such materials.


The Subcontract Agreement also included warranties made by the subcontractor,
provisions for settlement of disputes, payment details, and various other provisions. 
Regarding compliance with state and federal laws and regulations, the agreement
provided as follows:

Subcontractor [Castano] shall comply with all federal, state and
municipal laws, codes, regulations and ordinances effective where the
Work is to be performed, including purchasing all permits and licenses
and paying all fees necessary for the proper execution and completion
of the Work . . . . Subcontractor shall comply with the Federal
Occupation Safety and Health Act of 1970 ["OSHA"], as amended and
with any safety rules and regulations established by the Owner [Feagan
Street Casitas, in which S.M.R. is a general partner] or Contractor
[S.M.R.] for the performance of the Work.


Under a provision entitled "Safety Policy," the agreement provided that the
"Subcontractor [Castano] hereby acknowledges that it has read and become familiar
with Contractor's [S.M.R.'s] Safety Requirements and Subcontractor agrees to advise
each and every one of its employees, agents, subcontractors, and suppliers of
Contractor's Safety Requirements." Regarding third-party beneficiaries, the
agreement provided, "Owner [Feagan Street Casitas] is a third-party beneficiary of
this Subcontract, and Owner shall have the right (but not the obligation) to enforce
the provisions of this Subcontract for Owner's benefit. Owner shall have the same
rights and remedies against Subcontractor as are available to Contractor." This
agreement was signed by Castano and by Walter Fish on behalf of S.M.R.

 The "Scope of Work" Addendum to the Subcontract Agreement contained a
total of 58 numbered provisions establishing that Castano would provide "all labor,
materials, licenses, equipment, temporary power (generators), forklifts, crane[s],
tools, incidentals, freight, insurance, drawings, etc. necessary to provide a complete
framing job for buildings," and outlining the various materials and labor that would
be required for each aspect of the work that Castano was to perform. It also required
Castano to provide information to S.M.R., including "[c]urrent OSHA approved
safety programs," before starting work, and it stated the following:

The safety of all workmen is the Primary Concern of Morgan
Residential, Inc. This Subcontractor [Castano] shall perform all work
in strict compliance with all local codes and in accordance with all
OSHA statutes and regulations. This includes replacing any existing
safety railings that his workers remove. This Subcontractor understands
that his failure to comply with any of the requirements set forth above
shall result in his bearing the cost of any fines incurred because of such
failure. This Subcontractor shall comply with all rules and regulations
of OSHA. A hard-hat must be worn at all times when on the job site
when applicable to work. Morgan Residenial, Inc., requires that each
Subcontractor provide a current safety program. Any and all injuries
must be reported to Morgan Residential, Inc., where the appropriate
injury report must be filled out and calls for help, if needed, can be
made. The Subcontractor and his employees agree that animals, stereos,
alcohol, drugs and persons under the age of 18 years, will not be allowed
onto the job site. Subcontractor shall enforce this provision.


Provision number 49 of the "Scope of Work" addendum stated that "Contractor
[S.M.R.] or the contractor's job Superintendent [Harrington] shall have the right to
approve or reject the type, size, weight and/or time limits of the Subcontractor's
machinery and equipment utilized on the project."

 Castano then hired Alfredo Abarca, the brother of appellant Bray Abarca, to
help with the framing and cornice work on the construction project. Alfredo Abarca
signed an agreement with Castano naming Alfredo Abarca as a subcontractor and
stating, "Subcontractor agree[s] to perform the work and provide the material
described below. All work and material shall comply with all applicable codes and
requirements of and be subjects to the approval of all applicable City, County and
State agencies." The work to be performed included "framing, windstrong ties,
drywall (fire code), wall sheathing, roof decking, cornice, siding, windows, ext.
doors, tyvek, all interior details and punch out." This agreement also referenced an
attached list of additional terms and conditions, initialed by Alfredo Abarca,
including the following statement:

To the fullest extent permitted by law, Subcontractor [Alfredo Abarca]
agrees to save, indemnify and hold harmless MCC Construction
Services [Castano] and the Owner of the project [Feagan Street Casitas,
in which S.M.R. was a general partner] against any and all liability,
claims, judgment or demands, including demands arising from injuries
to or death of persons (including Subcontractor's employees), and
damage to property (including Subcontractor's property), and any other
loss, damage, or expenses arising directly or indirectly out of the
actions, work and activities of subcontractor and the work undertaken
by subcontractor, or out of the operation conducted by subcontractor. 
This indemnity obligation includes the obligation to defend Owner and
MCC Construction Services at the Subcontractor's expense.


One of the additional terms included on this list stated that Alfredo Abarca was
responsibile for furnishing general liability insurance at his own expense. 

 Alfredo Abarca also signed a document entitled "Subcontractor's Waiver."
This waiver designated Alfredo Abarca as an independent contractor and contained
another "hold harmless" clause. The waiver also stated, "The independent contractor
shall be solely responsible for all supervision and coordination of the work and for
all responsible [sic] precautions needed to carry out such work in a manner safe for
both the project and all people involved therein." All of these documents were signed
by Alfredo Abarca on March 31, 2006.

 Bray Abarca and Sanchez, along with several other men, were hired by Alfredo
Abarca. Alfredo Abarca's deposition testimony, along with that of Bray Abarca and
Sanchez, established that Alfredo Abarca was responsible for paying the workers on
his crew, including Bray Abarca and Sanchez, out of the money paid to him by
Castano and that Alfredo Abarca and his brother, Bray Abarca, provided the tools that
the crew used to do their work. None of the parties contest these facts. Alfredo
Abarca's deposition testimony also established that Castano explained the work that
needed to be done to Alfredo Abarca and his crew, who then completed the work on
their own without further instruction from Castano or Harrington, S.M.R.'s on-site
representative. Bray Abarca and Sanchez both testified in their depositions that they
knew what work to do and did not receive instructions or directions from Castano and
that if they had questions they would have asked Alfredo Abarca.

 Some of the work that Alfredo Abarca contracted with Castano to complete
required that he and his crew members use a scaffold. Castano gave deposition
testimony that he had observed Alfredo Abarca completing similar work on another
site and believed that Alfredo Abarca had a scaffold when he hired him to work on
the Feagan Street Casitas. Alfredo Abarca gave deposition testimony that he initially
thought Castano was supposed to provide the scaffold and that he talked to Castano
about the need for a scaffold every day that he was at the work site. Alfredo Abarca's
deposition testimony also indicated that he eventually realized that either he had to
get a scaffold to complete the work or he would not be able to complete the job. 
Alfredo Abarca stated in his deposition that Castano and Harrington, S.M.R.'s
representative on the site, gave him an "option" regarding how he would acquire the
needed scaffold.

 Alfredo Abarca and Sanchez, one of the appellants in this case, worked
together to construct two different scaffolds--one longer than the other. Alfredo
Abarca's deposition testimony established that Castano and Harrington gave him
permission to use some of the materials available on the site to build the scaffolds,
that Castano and Harrington were present and "supervising the job" while he and
Sanchez built the scaffold, and that Castano, while Harrington was present, gave
Alfredo Abarca suggestions and an "orientation" regarding how to build the scaffold.

 On April 14, 2006, Alfredo Abarca and Sanchez were working on the longer
of the two scaffolds they had built, when, according to Alfredo Abarca, Castano and
Harrington asked him to come down from the scaffold and send a different worker up
to help Sanchez because they needed to discuss with him some work that needed to
be done in another area of the work site. Alfredo Abarca sent his brother, Bray
Abarca, the other appellant in this case, up onto the scaffold to help Sanchez. While
Bray Abarca and Sanchez were working on the longer scaffold, it broke and they
were injured. In his deposition testimony, Alfredo Abarca acknowledged that he had
the opportunity to stop work and walk away from the job and that he did not have to
send his employees, Bray Abarca and Sanchez, up onto the scaffold. Sanchez
testified that he knew the materials used to build the scaffold were not intended to be
used as a scaffold and that he knew the scaffold lacked a railing. Bray Abarca also
testified during his deposition that he thought the scaffold was dangerous and that he
did not want to work on it.

 Bray Abarca and Sanchez filed their original petition on June 21, 2006,
alleging negligence against S.M.R. and Castano. Bray Abarca and Sanchez
eventually filed six amended petitions each. The sixth amended petitions, the live
pleadings at the time the trial court issued its final judgment, alleged claims of
negligence, negligence per se for violations of certain regulations promulgated under
the Occupations Safety and Health Act ("OSHA"), and breach of contract based on
the Subcontract Agreement between S.M.R. and Castano.

 Castano filed a total of three motions for summary judgment. He argued that
he was entitled to summary judgment dismissal of Bray Abarca and Sanchez's
negligence claims because they were employees of an independent contractor seeking
to recover for damages that resulted from their own negligent activity, and, therefore,
Castano was not liable. Castano also argued that he had no duty to warn Bray Abarca
and Sanchez because they were aware of the dangers of the scaffold and ignored the
warnings of others and that he did not retain control over the work of the independent
contractors such that he owed any other duty to them. Regarding Bray Abarca and
Sanchez's breach of contract claim, Castano argued that Bray Abarca and Sanchez
were not third-party beneficiaries of the contract between S.M.R. and Castano, and,
therefore, they were not entitled to recover under the contract. Castano also argued
that summary judgment was appropriate on Bray Abarca and Sanchez's negligence
per se claims because negligence per se claims based on OSHA violations are not
recognized under Texas law.

 Bray Abarca and Sanchez responded to Castano's motion for summary
judgment, arguing that Castano failed to prove that the negligent activity theory
applied, that a genuine issue of material fact remained with regard to the contractual
right of control, and that Castano exercised an actual right to control the details of
Bray Abarca and Sanchez's work.

 S.M.R. filed a traditional and no-evidence motion for summary judgment. It
its motion, S.M.R. argued that it was entitled to summary judgment because it owed
no duty to Bray Abarca and Sanchez under Chapter 95 of the Texas Civil Practice and
Remedies Code and, in the alternative, that even if Chapter 95 did not preempt the
common law, Bray Abarca and Sanchez had failed to show that S.M.R. owed them
any duty. Regarding the negligence per se claims, S.M.R. also argued that safety
rules and OSHA regulations did not expand the duties owed by S.M.R. under state
law and did not support negligence per se claims. S.M.R.'s motion for summary
judgment also argued that Bray Abarca and Sanchez could not recover under their
breach of contract claims against S.M.R. because they were not third-party
beneficiaries of the contract between Castano and S.M.R. The no-evidence portion
of S.M.R.'s motion did not present any new arguments.

 Bray Abarca and Sanchez responded to S.M.R.'s traditional and no-evidence
motion for summary judgment by arguing that Chapter 95 does not apply to this case. 
Furthermore, Bray Abarca and Sanchez argued that S.M.R. had a contractual right of
control and had exercised actual control over their work. They responded that S.M.R.
was also liable for negligence under the common law and that S.M.R. was liable for
negligence per se for violating OSHA regulations because S.M.R. and Castano had
contracted to have OSHA regulations apply. Finally, Bray Abarca and Sanchez
argued that summary judgment on their breach of contract claim would be improper
because they were third-party beneficiaries under the contract between S.M.R. and
Castano.

 On March 28, 2007, the trial court issued an order granting Castano's first
motion for summary judgment, dismissing Bray Abarca's and Sanchez's negligence
cause of action. On August 6, 2007, the trial court signed an order granting Castano's
motions for summary judgment on Bray Abarca's and Sanchez's remaining claims for
breach of contract and negligence per se and an order granting S.M.R.'s motion for
summary judgment on all of Bray Abarca's and Sanchez's claims. On August 30,
2007, the trial court signed the final judgment ordering that Bray Abarca and Sanchez
take nothing.

Standard of Review

 We review the trial court's grant of summary judgment de novo. Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). We must make
inferences, resolve doubts, and view the evidence in the light most favorable to the
non-movant. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). The
motions for summary judgment challenged in this appeal contained both traditional
and no-evidence grounds for summary judgment. See Tex. R. Civ. P. 166a(c), (i).

 A traditional summary judgment under Texas Rule of Civil Procedure 166a(c)
is properly granted only when the movant establishes that there are no genuine issues
of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P.
166a(c); Knott, 128 S.W.3d at 215-16. Summary judgment is only proper on claims
for which the movant is the defendant when the movant negates at least one element
of each of the plaintiff's causes of action or when the movant conclusively establishes
each element of an affirmative defense. Science Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997). If the movant conclusively negates an element of each
of the plaintiff's causes of action or conclusively establishes its own cause of action,
the burden shifts to the non-movant to respond with evidence raising a genuine issue
of material fact that would preclude summary judgment. Knott, 128 S.W.3d at
222-23. In deciding whether there is a disputed material fact precluding summary
judgment, evidence favorable to the non-movant will be taken as true, every
reasonable inference must be indulged in favor of the non-movant, and any doubts
must be resolved in favor of the non-movant. Id. at 215. 

 A no-evidence summary judgment motion asserts that no evidence exists as to
at least one essential element of the non-movant's claims on which the non-movant
would have the burden of proof at trial. Bendigo v. City of Houston, 178 S.W.3d 112,
114 (Tex. App.--Houston [1st Dist.] 2005, no pet.) (citing Jackson v. Fiesta Mart,
979 S.W.2d 68, 70-71 (Tex. App.--Austin 1998, no pet.)). On review, we ascertain
whether the non-movant produced more than a scintilla of probative evidence to raise
a genuine issue of material fact. Id.

 Here, because the summary judgment order does not specify the grounds on
which the trial court relied for its ruling, we will affirm the judgment if any of the
theories included in the motions has merit. Aleman v. Ben E. Keith Co., 227 S.W.3d
304, 309 (Tex. App.--Houston [1st Dist.] 2007, no pet.) (citing Weiner v. Wasson,
900 S.W.2d 316, 317 n. 2 (Tex. 1995)). 

Contract Claims

 In their second issue, Bray Abarca and Sanchez argue that the trial court erred
in granting S.M.R.'s and Castano's motions for summary judgment on their breach
of contract claims because Bray Abarca and Sanchez had presented sufficient
evidence to raise a fact issue concerning whether they were third-party beneficiaries
of the Subcontract Agreement between S.M.R. and Castano. S.M.R. and Castano
both argue that summary judgment was proper because Bray Abarca and Sanchez
were not third-party beneficiaries of the Subcontract Agreement between S.M.R. and
Castano, and, therefore, they are not entitled to recover any damages for breach of
that contract.

 In determining whether a third party has a right to enforce a contract, a court
must look to the express intent of the contracting parties. Tabor, Chhabra & Gibbs,
P.A. v. Medical Legal Evaluations, Inc., 237 S.W.3d 762, 773 (Tex. App.--Houston
[1st Dist.] 2007, no pet.). In determining the contracting parties' intentions, a court
must examine the contract in its entirety and consider and construe all of its
provisions together. Esquivel v. Murray Guard, Inc., 992 S.W.2d 536, 543 (Tex.
App.--Houston [14th Dist.] 1999, pet. denied). When a contract is not ambiguous,
the construction of the written agreement is a question of law for the court, and we
review the trial court's legal conclusions de novo. MCI Telecomms. Corp. v. Tex.
Utils. Elec. Co., 995 S.W.2d 647, 650-51 (Tex. 1999). There is a strong presumption
against finding that a third party is a beneficiary of a contract. See id. at 651. Courts
should presume that an agreement confers no third-party-enforcement rights unless
it "clearly appears" that the contract intends that the third party benefit, to the point
of suing upon the contract. Tabor, Chhabra & Gibbs, 237 S.W.3d at 773 (quoting
MCI Telecomms., 995 S.W.2d at 651).

 Accordingly, a contract does not confer third-party beneficiary rights unless:
(1) the contract plainly expresses the third-party obligation of the bargain-giver, (2)
it is unmistakable that a benefit to the third party is within the contemplation of the
primary contracting parties, and (3) the primary parties contemplate that the third
party would be vested with the right to sue for enforcement of the contract. Id. (citing
EPGT Tex. Pipeline, L.P. v. Harris County Flood Control Dist., 176 S.W.3d 330, 340
(Tex. App.--Houston [1st Dist.] 2004, pet. dism'd). The fact that a third party
receives incidental benefits from a contract is not sufficient to establish a right to
enforce the contract. Id. at 341.

 Here, S.M.R. and Castano both argued that Bray Abarca and Sanchez failed to
establish, as a matter of law, that they were entitled to enforce the Subcontract
Agreement as third-party beneficiaries. It is clear from looking at the Subcontract
Agreement as a whole that the contract between S.M.R. and Castano does not "plainly
express" a third-party obligation to employees of subcontractors to Castano and that
S.M.R. and Castano, as the primary parties, did not contemplate that Bray Abarca and
Sanchez would benefit under the contract or that they would be vested with the right
to sue for enforcement of the contract. The Subcontract Agreement devotes its
entirety to setting out the relationship and responsibilities of S.M.R. and Castano. 
Furthermore, the parties specifically listed the owner of the property, Feagan Street
Casitas, L.P., as a third-party beneficiary, but did not mention any other parties or
groups of people in that section. 

 Bray Abarca and Sanchez argued in their responses to S.M.R.'s and Castano's
motions for summary judgment that the Subcontract Agreement was meant to help
workers like themselves, and they quoted the provision in the agreement requiring
Castano to provide "scaffolding and [other] equipment . . . including all items
necessary or usual in work of this kind. . . ." They also cited various provisions in the
agreement and its addendum that required Castano to follow certain safety
requirements and regulations under OSHA and other laws. However, none of the
provisions cited indicate that S.M.R. and Castano, as the primary parties, intended to
protect another subcontractor's workers such that those workers could sue to enforce
the provisions of the Subcontract Agreement. Rather, these provisions, when read
together with all of the provisions of the Subcontract Agreement and its addendum,
reflect S.M.R.'s desire to protect itself from liability to any employees of Castano's
or Castano's own subcontractors. (2)

 We conclude that S.M.R. and Castano conclusively established as a matter of
law that Bray Abarca and Sanchez were not intended to be third-party beneficiaries
of the contract between S.M.R. and Castano. See MCI Telecomms., 995 S.W.2d at
650-51; Science Spectrum, 941 S.W.2d at 911. Therefore, the trial court did not err
in granting summary judgment in favor of S.M.R. and Castano on Bray Abarca's and
Sanchez's breach of contract claims. See Aleman, 227 S.W.3d at 309 (holding that
appellate court will affirm summary judgment if any theory included in motion has
merit).

 We overrule Bray Abarca's and Sanchez's second issue.

Negligence Claims

 In their first issue, Bray Abarca and Sanchez argue that the trial court erred in
granting S.M.R.'s motion for summary judgment based on Chapter 95 of the Texas
Civil Practice and Remedies Code because they raised a fact issue on the "non
applicability" of Chapter 95, or, alternatively, because they raised a fact issue
regarding S.M.R.'s retention of control, actual knowledge of a dangerous condition,
and failure to warn. (3) In their third issue, Bray Abarca and Sanchez argue that they
raised a fact issue concerning S.M.R.'s and Castano's liability for negligence under
the common law.

 In a negligence action, a plaintiff must show that (1) the defendant owed a duty
to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately
caused the plaintiff's injuries. D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex.
2002). The existence of a duty owed is a threshold consideration and is a question
of law for the court. See Tex. Home Mgmt., Inc. v. Peavy, 89 S.W.3d 30, 33 (Tex.
2002); Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).


A. Negligence Claims against S.M.R.

 In its motion for summary judgment, S.M.R. asserted that Bray Abarca's and
Sanchez's negligence claim against it failed as a matter of law because, under Chapter
95 of the Texas Civil Practice and Remedies Code, it owed no duty to Bray Abarca
and Sanchez. S.M.R. argued, alternatively, that even if the common law was not
preempted by Chapter 95, S.M.R. still did not owe a duty to Bray Abarca and
Sanchez. Bray Abarca and Sanchez responded that Chapter 95 does not apply to their
negligence claims against S.M.R. and that, even if it did apply, they raised a fact
issue, under both Chapter 95 and the common law concerning S.M.R.'s control,
knowledge, and failure to warn.

 1. Applicability of Chapter 95

 Section 95.002 of the Texas Civil Practice and Remedies Code provides as
follows:

This chapter applies only to a claim:


 (1) against a property owner, contractor, or subcontractor for
personal injury, death, or property damage to an owner, a
contractor, or a subcontractor or an employee of a contractor or
subcontractor; and 


 (2) that arises from the condition or use of an improvement to real
property where the contractor or subcontractor constructs, repairs,
renovates, or modifies the improvement.


Tex. Civ. Prac. & Rem. Code Ann. § 95.002 (Vernon 2005). 

 Bray Abarca and Sanchez argue that Chapter 95 does not apply to their claims
because they are not claims against a property owner. However, S.M.R. was a
general partner of the entity that owned the property in question. Furthermore, Scott
Morgan, president of S.M.R., stated in his affidavit that S.M.R. made all business
decisions, including all decisions relating to construction, on behalf of and as the
general partner of the property owner. Morgan's affidavit also stated that S.M.R.
"served as the general contractor for the construction project and was in possession
of the construction site during the time that the project was being built. . . ." This
uncontroverted statement by Morgan indicates that S.M.R. acted as a contractor and
as the owner's agent on this construction project. See Walker Ins. Services v. Bottle
Rock Power Corp., 108 S.W.3d 538, 549 (Tex. App.--Houston [14th Dist.] 2003, no
pet.) ("An agent is one who consents to the control of another, the principal, who has
manifested consent that the agent shall so act.").

 Therefore, S.M.R. is entitled to the protection offered by Chapter 95 as a
general partner and agent of the owner. See Fisher v. Lee and Chang Partnership,
16 S.W.3d 198, 203 (Tex. App.--Houston [1st Dist.] 2000, pet. denied) ("We hold
that sec. 95.003 applies to property owners and also to their agents who oversee their
properties.").

 2. Liability under Chapter 95

 Section 95.003 provides as follows:

A property owner is not liable for personal injury, death, or property
damage to a contractor, subcontractor, or an employee of a contractor or
subcontractor who constructs, repairs, renovates, or modifies an
improvement to real property, including personal injury, death, or
property damage arising from the failure to provide a safe workplace
unless:


 (1) the property owner exercises or retains some control over the
manner in which the work is performed, other than the right to
order the work to start or stop or to inspect progress or receive
reports; and 


 (2) the property owner had actual knowledge of the danger or
condition resulting in the personal injury, death, or property
damage and failed to adequately warn.


Tex. Civ. Prac. & Rem. Code Ann. § 95.003 (Vernon 2005). Therefore, in order to
establish their negligence claim against S.M.R. under Chapter 95, Bray Abarca and
Sanchez had to show (1) that S.M.R. retained control over the manner in which
Alfredo Abarca, as a subcontractor, and his employees, Bray Abarca and Sanchez,
performed the work, and (2) that S.M.R. had actual knowledge of the danger or
condition that resulted in Bray Abarca's and Sanchez's injuries and failed to
adequately warn them. See id.

a. Control

 Control can be established in two ways: by (1) a contractual right of control,
or (2) an exercise of actual control. Ellwood Tex. Forge Corp. v. Jones, 214 S.W.3d
693, 700 (Tex. App.--Houston [14th Dist.] 2007, pet. denied) (citing Dow Chem. Co.
v. Bright, 89 S.W.3d 602, 606 (Tex. 2002)). Bray Abarca and Sanchez raise both
arguments in this case.


 (1) Contractual control

 A contract may impose control upon a party, thereby creating a duty of care. 
Bright, 89 S.W.3d at 606. If the right of control over work details has a contractual
basis, the circumstance that no actual control was exercised will not absolve the
general contractor of liability. Id. (quoting Elliott-Williams Co. v. Diaz, 9 S.W.3d
801, 804 (Tex. 1999)). To be liable, the owner must have the right to control the
means, methods, or details of the independent contractor's work to the extent that the
independent contractor is not entirely free to do the work his own way. Ellwood, 214
S.W.3d at 700. Determining whether a contract gives a right of control is generally
a question of law for the court rather than a question of fact for the jury. Bright, 89
S.W.3d at 606.

 Bray Abarca and Sanchez argue that S.M.R. retained contractual control over
the project because of the phrase in the addendum to S.M.R.'s Subcontract
Agreement with Castano providing that the "[c]ontractor or the contractor's job
Superintendent shall have the right to approve or reject the type, size, weight and/or
time limits of the Subcontractor's machinery and equipment utilized on the project"
and because the contract required Castano to follow certain safety guidelines. 
However, when read in the context of the entire agreement between S.M.R. and
Castano, it is clear that the "right to approve" provision retains S.M.R.'s right to
inspect and approve certain aspects of Castano's work, but it does not give S.M.R.
the right to control the means, methods, or details of Castano's work to the extent that
Castano was not free to do the work his own way. See Ellwood, 214 S.W.3d at 700;
see also Victoria Elec. Cooperative, Inc. v. Williams, 100 S.W.3d 323, 329 (Tex.
App.--San Antonio 2002, pet. denied) (holding that contract provision allowing
owner right to decide what equipment subcontractor used in transporting utility poles
was unpersuasive because it referred to owner's "right to inspect and approve work
on the project, which is a right any general contractor has to ensure the work is
performed according to contract specifications"). Neither do the provisions requiring
Castano to comply with safety regulations and standards retain for S.M.R. a right of
control over the details of the work. See Bright, 89 S.W.3d at 607 (holding that
agreement with similar provisions did not impose upon general contractor any duty
of care to employee of independent contractor).

 Furthermore, the agreement, when read in its entirety, clearly establishes that
Castano was an independent contractor and charges Castano with responsibility for
providing all "labor, material, equipment, services and supervision" to complete the
work as described in the agreement. Castano discharged this responsibility, in part,
by hiring Alfredo Abarca and his crew of workers, including Bray Abarca and
Sanchez, pursuant to Castano's own subcontracting agreement with Alfredo Abarca. 
The agreement between S.M.R. and Castano also specifically charges Castano with
the responsibility of enforcing the safety provisions in the addendum.

 We conclude that the agreement between S.M.R. and Castano did not impose
a duty to Bray Abarca and Sanchez on S.M.R. because S.M.R. did not retain the right
to control the means, methods, or details of Alfredo Abarca's or his employees' work. 
See Bright, 89 S.W.3d at 607.

 (2) Actual control

 Bray Abarca and Sanchez also argue that S.M.R. exercised actual control over
the work of Alfredo Abarca and his crew, including Bray Abarca and Sanchez. 
Again, to be liable, the owner must have the right to control the means, methods, or
details of the independent contractor's work to the extent that the independent
contractor is not entirely free to do the work his own way. Ellwood, 214 S.W.3d at
700. The control must relate to the injury the negligence causes. Id. It is not enough
that the owner has the right to order the work to stop and start or to inspect progress
or receive reports. Id. Nor is it enough to recommend a safe manner for the
independent contractor's employees to perform the work. Id.

 To establish that S.M.R. owed them a duty of care, Bray Abarca and Sanchez
had to show that S.M.R. exercised control that (1) related to the activity that cause
their injuries, (2) involved either the power to direct that the work be done in a certain
manner or forbid its being done in an unsafe manner, and (3) related to the injury that
the alleged negligence caused. See Bright, 89 S.W.3d at 607; Coastal Marine Serv.,
Inc. v. Lawrence, 988 S.W.2d 223, 226 (Tex. 1999). Essentially, the evidence must
give rise to an inference that the supervising entity specifically approved the
dangerous act. See Lee Lewis Constr. Inc. v. Harrison, 70 S.W.3d 778, 783-84 (Tex.
2001) (holding general contractor's designated safety supervisor approved lanyard
fall-protection system and use of "bosun's" chair without independent life-line and
therefore retained right to control deceased worker's activity); Bright, 89 S.W.3d at
609 ("[W]e have never concluded that a general contractor actually exercised control
of a premises [when] there was no prior knowledge of a dangerous condition and no
specific approval of any dangerous act.").

 S.M.R. argued in its motion for summary judgment that Bray Abarca and
Sanchez failed, as a matter of law, to show any evidence that it had exercised actual
control over the work performed by Alfredo Abarca and his crew, including Bray
Abarca and Sanchez. Bray Abarca and Sanchez responded by arguing that Alfredo
Abarca's deposition testimony raised a fact issue concerning S.M.R.'s control over
the work performed by Bray Abarca and Sanchez. (4)

 When viewed in the light most favorable to the non-movant, Alfredo Abarca's
deposition testimony is sufficient to raise a fact issue on S.M.R.'s exercise of actual
control over the details of Bray Abarca's and Sanchez's work. Alfredo Abarca's
testimony established that (1) he understood that a scaffold was required for him to
do the work he contracted with Castano to perform; (2) Castano and Harrington,
S.M.R.'s site superintendant, gave him an "option" concerning how to acquire the
scaffold; (3) Castano and Harrington gave him permission to use some of their
materials on site to build the scaffold; (4) Castano and Harrington were present and
"supervising the job" while he and Sanchez built the scaffold; and (5) Castano, while
Harrington was present, gave him suggestions and an "orientation" regarding how to
build the scaffold that caused Bray Abarca's and Sanchez's injury. (5) These facts are
sufficient to raise a fact issue regarding S.M.R.'s control related to the activity that
caused Bray Abarca and Sanchez's injuries--i.e., the construction and use of the
scaffold--and the manner in which they worked. See Bright, 89 S.W.3d at 607. 
Alfredo Abarca's testimony that Harrington was present and "supervising" the
construction of the scaffold and that he approved the use of on-site materials to
construct the scaffold gives rise to an inference that S.M.R., through Harrington,
specifically approved the dangerous act. See Lee Lewis Constr., 70 S.W.3d at
783-84.



b. Knowledge and Failure to Adequately Warn

 S.M.R. argues that, even if we find that it exercised control over Bray Abarca's
and Sanchez's work, it still cannot be held liable under Chapter 95 because Bray
Abarca and Sanchez failed to show that S.M.R. had "actual knowledge of the danger
or condition resulting in the personal injury, death, or property damage and failed to
adequately warn." See Tex. Civ. Prac. & Rem. Code Ann. § 95.003(2). 
Specifically, S.M.R. argues that there was no evidence that it had actual knowledge
of the dangerous nature of the scaffold constructed by Alfredo Abarca and Sanchez
and that the deposition testimony of Bray Abarca and Sanchez demonstrated that they
were aware that the scaffold was dangerous and proceeded to use it anyway. See
Dyall v. Simpson Pasadena Paper Co., 152 S.W.3d 688, 705 (Tex. App.--Houston
[14th Dist.] 2004, pet. denied) (holding that Chapter 95 requires plaintiff to show
both control and actual knowledge with failure to adequately warn of danger in order
to prevail).

 However, viewing the evidence in the light most favorable to the non-movants,
we conclude that Alfredo Abarca's testimony that Harrington and Castano were
present while the scaffold was built and gave instructions regarding its construction
is sufficient to raise a fact question regarding Harrington's, and therefore S.M.R.'s,
actual knowledge that the scaffold was dangerous. Moreover, there is no evidence
that Harrington or Castano specifically warned Bray Abarca or Sanchez about the
danger of collapse, and their provision of the materials and Alfredo Abarca's
testimony that they provided instructions for building the scaffold is some evidence
that neither S.M.R. nor Castano adequately warned of the danger. Although Bray
Abarca and Sanchez testimony might establish that they were aware of some of the
dangers involved in using the scaffolding (i.e., the danger of falling due to the lack
of railing and thinking that the materials used were not intended to be used as a
scaffold), we conclude that the evidence here is not sufficient to establish as a matter
of law that they were adequately warned of the particular danger that actually befell
them (i.e., the danger of collapsing). Therefore, the summary judgment evidence is
also sufficient to raise a fact issue concerning whether Bray Abarca and Sanchez were
adequately warned of the danger that the scaffold could collapse. (6)

 We conclude that summary judgment was improper on this issue because Bray
Abarca and Sanchez raised both a fact issue regarding S.M.R.'s exercise of actual
control over the work done by Alfredo Abarca and his employees, Bray Abarca and
Sanchez, and a fact issue regarding S.M.R.'s actual knowledge of the danger and
failure to adequately warn. See Bright, 89 S.W.3d at 607.

 We sustain Bray Abarca and Sanchez's first issue as it relates to their
negligence claims based on the exercise of actual control and actual knowledge with
failure to warn against S.M.R. as governed by Chapter 95 of the Civil Practice and
Remedies Code.

 We note that Chapter 95 of the Civil Practice and Remedies Code preempts
common law claims. See Phillips v. Dow Chem. Co., 186 S.W.3d 121, 131-32 (Tex.
App.--Houston [1st Dist.] 2005, no pet.); see also Dyall v. Simpson Pasadena Paper
Co., 152 S.W.3d 688, 710 (Tex. App.--Houston [1st Dist.] 2004, pet. denied)
(recognizing that Chapter 95 encompasses all common-law negligence claims). 
Therefore, Bray Abarca and Sanchez are limited on remand to consideration of only
the claims envisioned by Chapter 95.

 We overrule Bray Abarca and Sanchez's third issue as it relates to S.M.R.

B. Negligence Claims against Castano

 In his motion for summary judgment, Castano asserted that Bray Abarca's and
Sanchez's negligence claim against him failed as a matter of law because he owed
them no duty under the common law. Sanchez and Bray Abarca responded that they
raised a fact issue concerning Castano's control, knowledge, and failure to warn. 
Because Bray Abarca and Sanchez were employees of Alfredo Abarca, who was
himself an independent contractor hired by Castano, the principles that govern a
general contractor's duty to a subcontractor's employees determine whether Castano,
in his role as a general contractor, owed a duty to Bray Abarca and Sanchez. See
Bright, 89 S.W.3d at 605-06.

 Generally, a general contractor does not have a duty to see that a subcontractor
performs work in a safe manner. Perez v. Embree Const. Group, Inc., 228 S.W.3d
875, 881 (Tex. App.--Austin 2007, pet. denied) (citing Redinger v. Living, Inc., 689
S.W.2d 415, 418 (Tex. 1985)). However, a limited duty arises if a general contractor
retains control over a subcontractor's methods of work or operative details to the
point that the subcontractor is not entirely free to do the work in his own way. Id.
(citing Koch Refining Co. v. Chapa, 11 S.W.3d 153, 154 (Tex. 1999)). The general
contractor's "duty of reasonable care is commensurate with the control it retains" over
the subcontractor. Hoechst-Celanese Corp. v. Mendez, 967 S.W.2d 354, 355 (Tex.
1998). General supervisory control that does not relate to the activity causing the
injury is not sufficient to create a duty. Perez, 228 S.W.3d at 881. However, "an
employer who gives on-site orders or provides detailed instructions on the means or
methods to carry out a work order owes the independent contractor employee a duty
of reasonable care to protect him from work-related hazards." Hoescht-Celanese, 967
S.W.2d at 357.

 Again, under the common law, Bray Abarca and Sanchez had to show that
Castano retained control over the method or operative details of the work of Alfredo
Abarca and his employees. See Perez, 228 S.W.3d at 881. The analysis for
establishing contractual or actual control over the work of a subcontractor is the same
under Chapter 95 or the common law. See Phillips, 186 S.W.3d at 132 (stating that
control provision of section 95.003 "codifies the common-law holding of Redinger
v. Living, 689 S.W.2d 415, 418 (Tex. 1985)"). 

 Bray Abarca and Sanchez argued that Castano retained contractual control over
their work, citing the Subcontract Agreement between S.M.R. and Castano. The
agreement between Castano and S.M.R. provided that Castano was responsible for
providing "all materials as . . . specified and all tools, accessories, scaffolding and
equipment which may be necessary to property execute the Work." Castano argues
that Bray Abarca and Sanchez's argument fails to consider the effect of the
Subcontract Agreement between Castano and Alfredo Abarca.

 The Subcontract Agreement between Castano and Alfredo Abarca, including
the "Subcontractor's Waiver," designated Alfredo Abarca as an independent
contractor to Castano and provided that Alfredo Abarca "shall be solely responsible
for all supervision and coordination of the work and for all responsible [sic]
precautions needed to carry out such work in a manner safe for both the project and
all people involved therein." However, nothing in Castano's written agreements with
Alfredo Abarca imposed a responsibility for providing the scaffolding on Alfredo
Abarca. Because Castano retained a contractual responsibility to provide the
scaffolding required to complete the work, Castano retained a contractual right of
control over the scaffolding that ultimately caused Bray Abarca and Sanchez's
injuries.

 Castano's responsibility here is distinguishable from Williams, in which the
court of appeals held that a contract provision retaining for the property owner the
right to decide what equipment the subcontractor used in transporting utility poles did
not create a right of control because that provision only referred to the owner's "right
to inspect and approve work on the project, which is a right any general contractor
has to ensure the work is performed according to contract specifications." See
Williams, 100 S.W.3d at 329. Here, Castano's contractual responsibility to provide
the scaffolding creates a right to control the details of his subcontractor's work to the
extent that Alfredo Abarca and his employees were not free to do the work in their
own way. See Ellwood, 214 S.W.3d at 700.

 We conclude that the contracts governing Castano's obligations in completing
the work on the project--Castano's agreement with S.M.R. to provide scaffolding
and the subsequent Subcontract Agreement between Alfredo Abarca and Castano and
the subcontractor's waiver signed by Alfredo Abarca, which did not shift the
responsibility for providing the scaffolding to Alfredo Abarca--did impose a duty on
Castano because Castano retained the right to control the methods or operative details
of Alfredo Abarca's and his employees' work as it related to the scaffolding. (7) See
Perez, 228 S.W.3d at 881; see also Bright, 89 S.W.3d at 606.

 We conclude that summary judgment was improper on this issue because Bray
Abarca's and Sanchez established that Castano retained a contractual right to control
the scaffolding used by Alfredo Abarca and his employees, Bray Abarca and
Sanchez. (8) See Ellwood, 214 S.W.3d at 700.

 We sustain Bray Abarca's and Sanchez's third issue as it relates to their
negligence claims against Castano.


Negligence Per Se Claims

 In their fourth issue, Bray Abarca and Sanchez argue that they raised a fact
issue concerning S.M.R.'s and Castano's negligence per se.

A. Negligence per se of S.M.R.

 We have already held that Chapter 95 applied to Bray Abarca's and Sanchez's
allegations against S.M.R. and that Bray Abarca and Sanchez failed to establish that
S.M.R. owed them a duty of care. Chapter 95 preempts their other common law
claims, including the negligence per se claim. See Phillips, 186 S.W.3d at 131-32;
see also Dyall, 152 S.W.3d at 710 (recognizing that Chapter 95 encompasses all
common-law negligence claims); Kelly v. LIN Television, 27 S.W.3d 564, 569-70
(Tex. App.--Eastland 2000, pet. denied) (holding that Chapter 95 encompassed
assertions of negligence, negligence per se, res ipsa loquitor, and negligent
misrepresentation).

 Therefore, we conclude that the trial court properly granted S.M.R.'s motion
for summary judgment on Bray Abarca's and Sanchez's negligence per se claims.

 We overrule Bray Abarca's and Sanchez's fourth issue as it relates to S.M.R.

B. Negligence per se of Castano

 In his motion for summary judgment, Castano argued that Bray Abarca's and
Sanchez's negligence per se claims based on OSHA violations are not recognized
under Texas law, and, therefore, failed as a matter of law. Bray Abarca and Sanchez
responded that their claims were valid because the subcontract agreement between
S.M.R. and Castano specifically provided for OSHA compliance.

 Regulations promulgated under the OSHA statute neither create an implied
cause of action nor establish negligence per se. McClure v. Denham, 162 S.W.3d
346, 353 (Tex. App.--Fort Worth 2005, no pet.) (citing Melerine v. Avondale
Shipyards, Inc., 659 F.2d 706, 707 (5th Cir. 1981)). Texas courts have also held that
the common law duties imposed by state law are not expanded by OSHA regulations. 
Id.; Richardson v. Cornerstone Constrs., Inc., 921 S.W.2d 465, 468 (Tex.
App.--Houston [1st Dist.] 1996, writ denied); see also M-T Petroleum, Inc. v. Burris,
926 S.W.2d 814, 818 (Tex. App.--El Paso 1996, no writ) (rejecting expansion of
premises owner's duty to independent contractor and holding OSHA standards did
not create duty whose breach was negligence per se).

 We have already held that the contract between S.M.R. and Castano did not
confer any benefits on Bray Abarca and Sanchez because they were not third-party
beneficiaries of that contract. Because the OSHA regulations do not expand the
common law duties imposed by state law, we hold that Bray Abarca's and Sanchez's
negligence per se claims also fail as a matter of law. See McClure, 162 S.W.3d at
353.

 We conclude that the trial court properly granted Castano's motion for
summary judgment on Bray Abarca's and Sanchez's negligence per se claims.

 We overrule the remainder of Bray Abarca's and Sanchez's fourth issue.

S.M.R.'s No-Evidence Motion for Summary Judgment

 In their fifth issue, Bray Abarca and Sanchez argue that the trial court erred in
granting S.M.R.'s no-evidence motion for summary judgment on their breach of
contract and negligence claims. (9) Because we have already determined that the trial
court's grant of summary judgment on the breach of contract claim was correct on the
grounds raised in S.M.R.'s traditional motion for summary judgment, we do not need
to address the separate grounds, if any, raised in the no-evidence portion of S.M.R.'s
motion for summary judgment. See Aleman, 227 S.W.3d at 309 (holding that
appellate court will affirm summary judgment if any theory included in motion has
merit). Regarding the negligence claims, we have already determined that Bray
Abarca and Sanchez presented summary judgment evidence raising genuine issues
of material fact concerning S.M.R.'s exercise of actual control over Bray Abarca and
Sanchez's work under Chapter 95 of the Civil Practice and Remedies Code, as well
as S.M.R.'s actual knowledge of the danger and failure to adequately warn. And we
have held that these claims pre-empt Bray Abarca's and Sanchez's common law
negligence claims against S.M.R. See Phillips, 186 S.W.3d at 131-32; see also
Dyall, 152 S.W.3d at 710 (recognizing that Chapter 95 encompasses all common-law
negligence claims).

 We overrule Bray Abarca's and Sanchez's fifth issue.

Castano's Request for Sanctions

 In his appellate brief, Castano requests that this Court sanction Bray Abarca
and Sanchez for bringing a frivolous appeal. Texas Rule of Appellate Procedure 45
provides,

If the court of appeals determines that an appeal is frivolous, it may--on
motion of any party or on its own initiative, after notice and a reasonable
opportunity for response--award each prevailing party just damages. 
In determining whether to award damages, the court must not consider
any matter that does not appear in the record, briefs, or other papers filed
in the court of appeals.


Tex. R. App. P. 45. To objectively determine whether an appeal is frivolous, we look
at the record from the viewpoint of the advocate and decide whether he had
reasonable grounds to believe that the case could be reversed. Smith v. Brown, 51
S.W.3d 376, 381 (Tex. App.--Houston [1st Dist.] 2001, pet. denied).

 Here, Bray Abarca and Sanchez have not offered any response to Castano's
request for sanctions. However, in their appellate brief, Bray Abarca and Sanchez
argued several grounds that they could have reasonably believed were not frivolous
but could lead to the reversal of the trial court's judgment. We have held that their
arguments that they raised fact issues concerning S.M.R.'s and Castano's control over
their work, knowledge, and failure to adequately warn were meritorious. Therefore,
we deny Castano's request for sanctions. See Smith, 51 S.W.3d at 381.

Conclusion

 We affirm the judgment of the trial court granting S.M.R.'s and Castano's
motions for summary judgment on Bray Abarca's and Sanchez's breach of contract
and negligence per se claims. We reverse the judgment of the trial court granting
S.M.R.'s and Castano's motions for summary judgment on Bray Abarca's and
Sanchez's negligence claims against S.M.R. under Chapter 95 of the Civil Practice
and Remedies Code and against Castano under the common law, and we remand the
cause to the trial court for proceedings consistent with this opinion.





 Evelyn V. Keyes

 Justice


Panel consists of Justices Keyes, Hanks, and Bland.

1. See Tex. Civ. Prac. & Rem. Code Ann. §§ 95.001-95.004 (Vernon 2005).
2. Bray Abarca and Sanchez also cite testimony by Walter Fish, Ron Harrington, and
Castano regarding construction of the Subcontract Agreement. However, this
testimony is not relevant to our analysis. See Esquivel v. Murray Guard, Inc., 992
S.W.2d 536, 543 (Tex. App.--Houston [14th Dist.] 1999, pet. denied) (holding that
reviewing courts must examine the contract in determining contracting parties'
intentions); see also Biafano v. Econo Builders, Inc., 401 S.W.2d 670, 676 (Tex. Civ.
App.--Dallas 1966, writ ref'd n.r.e.) ("Parties to a contract are bound by its plain
terms and their intentions are to be ascertained from the language of the contract itself
and not from what they supposed it to contain.").
3. Bray Abarca and Sanchez actually argue that issue one applies to both S.M.R. and
Castano. However, Chapter 95 was a ground argued only by S.M.R., so we discuss
it only as it applies to S.M.R.
4. In their appellate brief, Bray Abarca and Sanchez discuss the acts indicating S.M.R.'s
and Castano's exercise of actual control together. However, we are analyzing their
arguments here in light of the claims against S.M.R.
5. When Alfredo Abarca was asked, "So what did [Castano] tell you about how to build
the scaffold?" he replied, "To do--to make the wooden post, which had to be
aluminum for the jacks." It is not actually clear from this testimony if Castano was
telling him that the posts should be made of aluminum or if this was advice about how
to construct a wooden post. Alfredo Abarca also testified that Castano, with Ron
Harrington present, gave him an "orientation" about how to build the scaffold.
6. Our holding that this evidence raises a fact issue concerning whether Bray Abarca and
Sanchez were adequately warned of the danger involved in using the scaffold is
limited to the particular facts raised in this case. This holding is not intended to
supply a general rule regarding the duty to warn or safety standards of scaffolds.
7. Castano argues that Alfredo Abarca was responsible for providing all of the tools and
equipment necessary to complete the work Castano hired him to complete. He cites
his deposition testimony that he gave Abarca money with which to rent or purchase
scaffolding. This conflicts with Alfredo Abarca's deposition testimony that Castano
only paid him money that was due to be paid to his workers. This testimony would
be sufficient to raise a fact issue as to the actual control of the scaffolding. However,
none of this testimony changes the obligations of the parties as set out in the contracts. 
Castano was contractually obligated to provide the scaffolding on the site, and
Alfredo Abarca was contractually obligated only to "perform the work and provide
the material" described in his subcontractor agreement with Castano. Alfredo
Abarca's subcontractor agreement described "the work to be performed" as "framing,
windstrong ties, drywall (fire code), wall sheathing, roof decking, cornice, siding,
windows, ext. doors, tyvek, all interior details and punch out." The contract between
Castano and Alfredo Abarca did not require Alfredo Abarca to provide any tools or
scaffolding, while the contract between Castano and S.M.R. required Castano to
provide scaffolding. When parties have entered into an unambiguous contract--one
that can be given a definite or certain legal meaning--we will enforce the intention
of the parties as written in the instrument. See SAS Inst., Inc. v. Breitenfeld, 167
S.W.3d 840, 841 (Tex. 2005); Sun Oil Co. V. Madeley, 626 S.W.2d 726, 731 (Tex.
1981).
8. Castano also argues that he did not exercise actual control over the work of Alfredo
Abarca and his employees, Bray Abarca and Sanchez. However, if the right of
control over work details has a contractual basis, the circumstance that no actual
control was exercised will not absolve the general contractor of liability. See Bright,
89 S.W.3d at 606. Moreover, as we already explained in our discussion of the
negligence claims against S.M.R., the record raises a fact issue as to Castano's
exercise of actual control over the building of the scaffold.
9. Again, Bray Abarca and Sanchez argue that issue five applies to both S.M.R. and
Castano. However, only S.M.R. filed a no-evidence motion for summary judgment
with the trial court, so this issue only applies to S.M.R.